455 S.E.2d 283

Ted Crandle POLLARD

v.

COMMONWEALTH of Virginia.

Record No. 1134–93–1.

Court of Appeals of Virginia,
Norfolk.

March 28, 1995.

Michael H. Pitt, Portsmouth (S. Earl Griffin, Griffin, Pappas & Scarborough, P.C., on brief), for appellant.

Eugene Murphy, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: BAKER, BENTON and WILLIS, JJ.

BENTON, Judge.

Ted Crandle Pollard was convicted of involuntary manslaughter for conduct proscribed by Code § 18.2–36.1. He contends on this appeal that the evidence was insufficient to prove that the death of the victim was "caused as a result" of Pollard's driving under the influence of alcohol. We affirm the conviction.

The evidence at trial proved that on June 28, 1991 at 9:20 p.m., Pollard's vehicle was stopped in one of two west-bound lanes of Portsmouth Boulevard at a traffic light. A driver, who was behind a vehicle in the left west-bound lane, testified that the lighting and the weather conditions were fair and that drivers had their headlights on. He further testified that when the traffic light turned green, Pollard's vehicle, which was in the right west-bound lane, sped away "like he was going to a race or something." Pollard's vehicle struck and killed Antonio Whitehead, who was crossing Portsmouth Boulevard.

The same witness testified that he did not see Whitehead prior to the impact. He also did not see or hear Pollard apply brakes prior to the accident. After the impact, Pollard's vehicle slid to the left, came to a stop by the median strip, and then moved to the right-side lane.

A witness who was sitting on the back of his car at a nearby store testified that the area was "real light, pretty sufficient" and that street lights were on. He also testified that he saw Whitehead on the median getting ready to cross the street. Whitehead was riding a bicycle and was wearing dark blue clothing. The witness also testified that Pollard's vehicle was "going pretty fast" and that he did not hear any brakes before impact. Pollard's vehicle moved into the left lane after impact and then switched back to the right lane. When Pollard got out of his vehicle, he was staggering.

Officer Rodriguez testified that the speed limit at the area where the accident occurred was thirty-five miles per hour. When he arrived, Pollard's speech was slurred, his eyes were bloodshot, his face was flushed, and his body smelled of

alcohol. Rodriguez testified that although Pollard said he had consumed only one beer, when he offered to give Pollard field sobriety tests, Pollard said, "I know I'm drunk." Pollard could not successfully perform the field sobriety tests. After Rodriguez arrested Pollard and transported him to the police station, Pollard became combative and refused to take a blood or breath test.

Without objection, an expert in accident reconstruction testified for the prosecution that the minimum speed of Pollard's vehicle was 46.64 miles per hour. He also testified that he found "no evidence of any external force striking the vehicle while it was sliding" and that the impact occurred prior to the brakes being applied. The skid marks indicated that Pollard's vehicle traveled from the right lane into the left lane.

In his defense, Pollard presented the testimony of an expert who estimated that Pollard was travelling between forty and forty-five miles per hour at the time of impact. Pollard's expert also testified that his findings were consistent with testimony that Pollard was in the right lane when he came into contact with Whitehead, then veered off into the left lane.

Pollard testified that at 6:30 p.m. he went to an establishment that served alcoholic drinks. He left at 9:00 p.m., after drinking three beers. Pollard testified that Whitehead "stepped out in front of me pushing a bicycle, and immediately I jammed the brakes and hit him at the same time." He said that he could not avoid hitting Whitehead. Pollard said that Whitehead was ten or fifteen feet ahead of him when he first saw him. Pollard testified that the last time he looked at his speedometer, he was at thirty-five to forty miles per hour, but that he could have been travelling at the speeds suggested by the experts.

Mary Johnson, James Hooker, and Joseph Griffith, all of whom were at the location where Pollard drank beer, corroborated his testimony. They testified that Pollard did not exhibit any physical signs of drunkenness when he left to enter his motor vehicle.

The trial judge found that Pollard unintentionally caused the death of Whitehead. He convicted Pollard of a violation of Code § 18.2–36.1(A). This appeal followed.

Code § 18.2–36.1 reads as follows:

A. Any person who, as a result of driving under the influence in violation of subdivision (ii), (iii), or (iv) of § 18.2–266, unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.

B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than twenty years, one year of which shall be a mandatory, minimum term of imprisonment.

C. The provisions of this section shall not preclude prosecution under any other homicide statute. The driver's license of any person convicted under this section may be suspended for a period of up to five years. This section shall not preclude any other revocation or suspension required by law.

Pollard raises no issue concerning the sufficiency of the evidence to prove that he was driving under the influence of alcohol in violation of Code § 18.2–266. Instead, Pollard contends that the evidence was insufficient to sustain the conviction because the evidence did not prove "a causal connection between [his] driving under the influence and the death of the victim." Relying upon *Mayo v. Commonwealth*, 218 Va. 644, 238 S.E.2d 831 (1977), and *Keech v. Commonwealth*, 9 Va.App. 272, 386 S.E.2d 813 (1989), Pollard argues that he cannot be convicted of involuntary manslaughter unless his intoxication was shown to be the proximate cause of the accident. He further argues that Whitehead's conduct constituted an independent, intervening act which, alone, caused Whitehead's fatal injury; therefore, Pollard argues, the conviction should be set aside. In response, the Commonwealth argues that the statute creates strict liability and requires no proof of causation. The Commonwealth alterna-

tively argues that the evidence proved causation if the statute requires the Commonwealth to prove it.

■ In determining whether the evidence was sufficient to support the conviction, we must analyze the evidence in light of the elements specified in Code § 18.2–36.1. In a prosecution under subsection (A), the statute eliminates the requirement to prove criminal negligence. *Cf. Keech,* 9 Va.App. 272, 386 S.E.2d 813; Code § 18.2–36.1(B). When proceeding under Code § 18.2–36.1(A), the Commonwealth is obligated to prove that the accused drove "under the influence in violation of subdivision (ii), (iii), or (iv) of [Code] § 18.2–266." That element is not contested by Pollard. Proof of a violation of Code § 18.2–266 is sufficient to establish simple negligence. *Essex v. Commonwealth,* 228 Va. 273, 282, 322 S.E.2d 216, 221 (1984) (a person who drives in violation of Code § 18.2–266 "is, of course, negligent").

■ The statute's very language, however, requires proof of causation. The phrase, "as a result of driving under the influence ... causes the death," Code § 18.2–36.1(A), requires proof of a causal connection between the driver's intoxication and the death of another person.

■ The evidence in this case was sufficient to prove that Pollard's intoxication caused him to operate his vehicle in a manner that resulted in Whitehead's death. The evidence proved that Pollard's speed and failure to maintain proper look out contributed to Whitehead's death. The evidence also proved that Pollard smelled of alcohol, slurred his speech and was unsteady. Thus the proof of intoxication was sufficient to connect Pollard's speed, failure to brake, and inattention with his "impaired perception, retarded reflexes, and disrupted motor coordination." *Beck v. Commonwealth,* 216 Va. 1, 5, 216 S.E.2d 8, 10 (1975). Thus, proof of causation has been satisfied.

Citing *Mayo* and other cases, the Supreme Court of Virginia has recently stated general rules concerning the impact of contributory negligence in an involuntary manslaughter conviction.

"All of the authorities agree that contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not."

Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence.

*Hubbard v. Commonwealth,* 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992) (citations omitted).

■ Applying these general principles, we disagree with Pollard's primary contention. The evidence failed to prove that Whitehead's conduct was "an independent, intervening act alone causing the fatal injury." *Id.* At best, the evidence proved only that Whitehead's conduct may have been "a concurring cause." *Delawder v. Commonwealth,* 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973). However, that is not sufficient to exonerate Pollard of culpability. *Id.*

For these reasons, we affirm the conviction.

*Affirmed.*