COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Coleman, Elder,
          Bray, Annunziata, Bumgardner and Senior Judge Overton
Argued at Richmond, Virginia


FRANKLIN EUGENE HALL
                                          OPINION BY
v.   Record No. 1280-98-4    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                          JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


UPON A REHEARING EN BANC


FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Frank A. Hoss, Jr., Judge

Gregory E. Stambaugh for appellant.

Virginia B. Theisen, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


     Franklin Eugene Hall (appellant) was convicted in a jury

trial of aggravated involuntary manslaughter, in violation of

Code § 18.2-36.1(B).  Appellant argued that the trial court

erred in: (1) admitting the results of the preliminary

alco-sensor test; (2) allowing testimony during the

Commonwealth's case-in-chief that appellant was previously

convicted of an unrelated offense of driving under the

influence; (3) denying his motion to strike the evidence; and

(4) refusing appellant's jury instruction on causation.  A

divided panel of this Court reversed appellant's conviction and

remanded the case for a new trial.  See Hall v. Commonwealth,

Record No. 1280-98-4, 1999 WL 1133268, September 28, 1999.  On the Commonwealth's motion, we stayed the mandate of that decision and granted a rehearing en banc.  Upon rehearing en banc, we find no reversible error and affirm appellant's conviction.

## I.  FACTS

On February 2, 1997, shortly after 8:00 p.m., a pickup truck driven by appellant and a motorcycle driven by Wayne A. Holmes collided at the intersection of Occoquan and Horner Roads in Prince William County.  Holmes died in the crash.  In the Commonwealth's case-in-chief, Mike Arnold testified that he was driving about forty miles per hour westbound on Occoquan Road in the left lane and he was slowing down as he approached an intersection.  Arnold said he was fifty feet from the intersection at Horner Road when he saw in his rearview mirror a motorcycle approaching in the right lane.  He testified that the traffic light at the intersection controlling his travel direction was green.  As Arnold slowed, the motorcycle continued in the right lane past his car.  Arnold testified that a pickup truck, driven by appellant eastward on Occoquan Road, made a left turn onto Horner Road, across the westbound travel lanes of Occoquan Road.  Arnold testified that he was thirty feet away from the intersection when the truck turned, that the truck had given no turn signal, and that the truck did not make a proper turn -- "it cut the corner."  Arnold saw the collision between

-

the motorcycle and the truck.  He estimated that thirty seconds passed between the time he first saw the motorcycle in his rearview mirror and the time of the collision.

Connie Stewart was a passenger in a car, which turned onto Occoquan Road at Route One and began travelling westbound toward Horner Road.  She saw the motorcycle turn onto westbound Occoquan Road from Route One.  The car in which Stewart was a passenger was travelling west in the left lane of Occoquan Road, and the motorcycle was travelling west in the right lane of Occoquan Road.  As the car in which Stewart was riding was moving at thirty-five miles per hour, the motorcycle passed the car.  The motorcyclist gave a hand signal and drove into the left westbound lane.  The motorcyclist passed a car in the right westbound lane, gave a hand signal, and moved again to the right westbound lane.  Stewart estimated the speed of the motorcycle as forty to forty-five miles per hour.  Stewart testified that as they were approaching the intersection, the light "had turned green."  Her car was in the left travel lane, and the motorcycle was in the right travel lane.  As the motorcycle passed to the right of a vehicle in front of Stewart's car, Stewart "saw the motorcycle flying up in the air."  She did not witness the actual collision and said it was dark at the time of the accident.

Officer J.S. Scalici, who examined the crash scene one-half hour following the accident, opined that if appellant's truck

-

had not hit the motorcycle at the point of impact, the truck would have traveled into oncoming traffic on Horner Road. The officer testified that the motorcycle was travelling between thirty-five and forty miles per hour and that appellant's truck was travelling between thirty and thirty-five miles per hour. He admitted, however, that his estimates of speed were "guess[es]."

When the officer interviewed appellant, appellant said he was returning from a bowling alley when the accident occurred. After the officer told appellant the bowling alley was in the opposite direction, appellant said he left the bowling alley, went to a friend's house, and was returning from the friend's house when the accident occurred. Appellant told the officer he had consumed three beers between 5:15 p.m. to 8:00 p.m. The officer also testified that appellant "had an odor of a strong alcohol beverage about his person."

When the officer made inquiry concerning appellant's driving status, appellant gave him an Alabama driver's license. Appellant said the license was suspended for failure to pay fines, that he had just returned from Alabama, and that "he had taken care of the fines." When the officer asked appellant if he had ever had a Virginia driver's license, appellant responded that he had not. Over objection, the officer testified that he told appellant the Department of Motor Vehicles records indicated appellant's Virginia driver's license had been

-

suspended for a conviction. When asked about the conviction, the officer testified that appellant's Virginia license was suspended for "DWI" and that appellant's Alabama license had been revoked "for driving while intoxicated," not for failure to pay fines. Appellant unsuccessfully objected to the introduction of evidence concerning the prior convictions.

Officer Christopher Lando testified that he arrived at the accident scene at 8:30 p.m., obtained appellant's Alabama driver's license, and determined that it was suspended. When he asked appellant to complete a "statement form," appellant wrote that "'[he] was taking a left on' -- '[he] had the green' -- '[he] was making a left' -- '[Holmes] hit [him].'" After Lando "detected a very strong odor of an alcoholic beverage about [appellant's] person" and was told by appellant that he had consumed three beers at a bowling alley, he had appellant perform several "field dexterity tests." Appellant was unsuccessful in those tests. Lando testified that he then gave appellant a "field alco-sensor test," which he identified as a device that can determine a person's blood alcohol concentration at the scene of the accident. Appellant objected to testimony concerning the results of the alco-sensor test. The trial judge overruled the objection. Lando then testified that when appellant's reading reached .200, he stopped the test and arrested appellant. After the officer transported appellant to

-

the police headquarters, appellant's breath was again tested and indicated an alcohol content of .22.

A forensic toxicologist tested fluid recovered from Holmes' body and concluded that Holmes' blood alcohol level was .13. He agreed that at .13, a person's "vision, judgment, and ability to execute or act on that judgment . . . would be a little impaired." He further testified that at .22, appellant's blood alcohol level, a person would suffer "incoordination of the muscle, . . . disorientation, . . . [a]nd confusion." Over appellant's objection, the toxicologist opined that a man of appellant's size would have to have consumed "more than 10 beers" to reach an alcohol level of .22.

At the conclusion of the Commonwealth's case, appellant testified that he went to a friend's house after leaving the bowling alley on the night of the accident. He left the friend's house and drove east on Occoquan Road. When he arrived at the intersection with Horner Road, he was in the left turn lane and the light was red. He testified that when the light controlling his travel lane turned to a green arrow, he turned left and was struck by a motorcycle. On cross-examination, appellant conceded that he had consumed more than three beers that night and was not sure how many beers he actually had. Appellant testified he had a prior felony conviction.

Elizabeth Tuialana testified that prior to the collision, she was driving north on Horner Road in the left lane. As she

-

approached the intersection of Horner and Occoquan Roads, intending to turn left onto westbound Occoquan Road, the light controlling her lane of travel turned yellow. She stopped before entering the intersection because the light turned red. She saw a truck on Occoquan Road ready to turn onto Horner Road. After looking into her rearview mirror to see if her friend was behind her, she saw a truck on Occoquan Road turning onto Horner Road, saw "something coming down Occoquan and then the accident occurred." She recalled that the accident occurred within "a matter of seconds" of the time she arrived at the intersection.

Rachael Robinson testified that she was behind Tuialana's car going north on Horner Road. She stopped when Tuialana stopped, and she recalled that the light was yellow. When she stopped, she saw a truck stopped on Occoquan Road to her left in a turning lane. She testified that the accident then occurred within "seconds. It was fairly quickly."

John Olivo, a traffic signal supervisor for the Virginia Department of Transportation (VDOT), testified to the signal sequence at the intersection. He stated that after the signal light controlling Horner Road traffic turns red, if a vehicle is in the left turn lane at Occoquan Road, the next sequence of lights would display a green turn arrow for that lane of travel. The green arrow would be displayed for seven to twelve seconds, depending on the number of vehicles in the turn lane. He also testified it was impossible for the green turn arrow to display

-

while a solid green light is displaying for traffic coming from the opposite direction. After a maximum of twelve seconds, the green arrow becomes yellow for four seconds and then becomes a solid green ball. He also testified that it was possible for a green turn arrow to display if a vehicle was also making a left turn coming from the opposite direction.

At the conclusion of all the evidence, the trial judge refused an instruction tendered by appellant concerning the statutory element of causation that must be shown between appellant's intoxication and the death of Holmes. The trial judge ruled that the tendered instruction was redundant because the finding instruction contained the requisite elements of the offense. Following its deliberations, the jury convicted appellant of aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B).

## II.   EVIDENCE OF ALCO-SENSOR TEST

Following the collision, the police officer used an "alco-sensor" to perform a preliminary test of appellant's breath-alcohol content. Over appellant's objection, the trial judge permitted the officer to testify concerning the result of appellant's preliminary breath test. Appellant contends that Code § 18.2-267 bars that testimony in a prosecution under Code § 18.2-36.1. The Commonwealth argues that Code § 18.2-267 only bars introduction of the results of the test in a prosecution under Code § 18.2-266 or Code § 18.2-266.1.

-

The Commonwealth indicted and tried appellant for

aggravated manslaughter, which is statutorily defined as

follows:

> A.  Any person who, as a result of driving
> under the influence in violation of
> subdivision (ii), (iii), or (iv) of [Code]
> § 18.2-266, unintentionally causes the death
> of another person, shall be guilty of
> involuntary manslaughter.
>
> B.  If, in addition, the conduct of the
> defendant was so gross, wanton and culpable
> as to show a reckless disregard for human
> life, he shall be guilty of aggravated
> involuntary manslaughter, a felony
> punishable by a term of imprisonment of not
> less than one nor more that twenty years,
> one year of which shall be a mandatory,
> minimum term of imprisonment.

Code § 18.2-36.1.

Code § 18.2-267(A) permits a preliminary breath analysis of

a "person who is suspected of a violation of [Code] § 18.2-266

or [Code] § 18.2-266.1."  However, another provision of that

statute states that "[t]he results of the breath analysis shall

not be admitted into evidence in any prosecution under [Code]

§ 18.2-266 or [Code] § 18.2-266.1, the purpose of this section

being to permit a preliminary analysis of the alcoholic content

of the blood of a person suspected of having violated the

provisions of [Code] § 18.2-266 or [Code] § 18.2-266.1."  Code

§ 18.2-267(E).

The manslaughter statute under which appellant was tried

expressly references a violation of Code § 18.2-266 as the

-

predicate for the prosecution of aggravated manslaughter.  By
the express wording of the statute, a prosecution for a
violation of Code § 18.2-36.1 is necessarily a "prosecution
under [Code] § 18.2-266."  Code § 18.2-267(E).  The Commonwealth
can prove a violation of Code § 18.2-36.1 if and only if it
proves a violation of Code § 18.2-266.  Thus, we hold that Code
§ 18.2-267(E) applies to bar introduction of the results of the
preliminary analysis because a prosecution under Code
§ 18.2-36.1 includes as an element of the offense proof of a
violation of Code § 18.2-266.  Accordingly, under the
circumstances of this case, the trial court erred in admitting
the results of the preliminary alco-sensor breath test.

However, our inquiry does not end there.  We must decide
whether the error requires reversal.  Our determination of
whether the error is harmless is guided by familiar principles.
Non-constitutional error "is harmless '[w]hen it plainly appears
from the record and the evidence given at the trial that the
parties have had a fair trial on the merits and substantial
justice has been reached.'"  Lavinder v. Commonwealth, 12 Va.
App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting
Code § 8.01-678) (emphasis added in Lavinder).  To determine
whether an error is harmless, the Court "must review the record
and the evidence and evaluate the effect the error may have had
on how the finder of fact resolved the contested issues."  Id.
at 1007, 407 S.E.2d at 912.  "An error does not affect a verdict

-

if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same."  Id. at 1005, 407 S.E.2d at 911.  We have further said:

> "Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.  These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

Sargent v. Commonwealth, 5 Va. App. 143, 154, 360 S.E.2d 895, 901 (1987) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 674 (1986)).

Applying the standard articulated in Lavinder, we conclude that the error was harmless because appellant suffered no prejudice and had the error not occurred, the verdict would have been the same.  See Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.  During the Commonwealth's case-in-chief, the actual breath test result taken pursuant to the Virginia Implied Consent Law was introduced into evidence without objection.  The test result indicated a blood alcohol content of .22, reflecting a higher concentration of alcohol than that obtained from the preliminary alco-sensor test.  Accordingly, the error in admitting the results from the preliminary alco-sensor test was harmless.

-

III.  EVIDENCE OF UNRELATED DUI CONVICTIONS

Next, appellant contends the trial court erred in allowing testimony of his other unrelated convictions for driving under the influence of alcohol.  The Commonwealth argues that this evidence, although proving a prior criminal act, was admissible because appellant's lie about the status of his license was proof of consciousness of guilt.  We disagree that the evidence was admissible for that purpose.

> As a general rule, evidence that an accused has committed a criminal offense other than that charged in the indictment is inadmissible.  That is because such evidence confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial.

Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 892-93 (1983).

The evidence concerning the prior convictions was not offered to prove an element of the offense.  "[I]t is improper to use evidence that a defendant has committed another crime when it has 'no connection with the one under investigation . . . [because those] other acts of criminality . . . are not legally relevant and should not be [used] to prejudice the defendant or to create a probability of guilt.'"  Guill v. Commonwealth, 255 Va. 134, 140, 495 S.E.2d 489, 492 (1998) (citation omitted).

_

Although we find that the trial court erred in admitting evidence of the unrelated convictions for driving under the influence of alcohol, "this does not automatically entitle . . . [the defendant] to a reversal of his conviction. 'A conviction should not be reversed unless the introduction of improper evidence suggests a manifest probability that it was prejudicial to the defendant.'"  Rider v. Commonwealth, 8 Va. App. 595, 600, 383 S.E.2d 25, 27 (1989) (citations omitted).

We, therefore, look to the evidence to see if the improperly admitted evidence of appellant's prior convictions had any effect upon the guilty verdict of the jury.  We acknowledge the prejudicial tendency of introducing evidence in this aggravated involuntary manslaughter prosecution that appellant had two prior DUI convictions and that his license to operate a motor vehicle was suspended, particularly where, as here, that appellant's driving intoxicated caused the homicide. However, even though prejudicial, on this record we find the evidence of appellant's guilt to have been so overwhelming that the jury could not have reached any other verdict.  Thus, because the inadmissible evidence did not affect the verdict, we find the error harmless.  See Lavinder, 12 Va. App. at 1005, 407 S.E.2d at 911.  On this record, had the error not occurred, we conclude that the verdict would have been the same.

The effect the evidence of the two DUI convictions had upon the jury was completely overshadowed by other evidence in the

record that appellant's intoxication caused the accident and homicide. Officer Lando smelled "a very strong odor of alcoholic beverage" upon appellant's breath at the accident scene. Appellant failed the field sobriety tests administered by the officer. His blood alcohol level was .22 on the breathalyzer test administered under the Virginia Implied Consent Law. Dr. Huynh, an expert in forensic toxicology employed by the Department of Criminal Justice for the Commonwealth of Virginia, compared the breath results of appellant and Holmes and explained that the difference between the two was "enormous." Dr. Huynh further testified that appellant would have had to drink at least ten beers to reach .22, whereas appellant told the police officer that he had consumed only three glasses of beer.

The testimonies of several eyewitnesses and of the VDOT traffic supervisor prove that appellant turned, in violation of the traffic control signal, into the path of the victim's motorcycle. The blood alcohol test proved that, at the time, appellant was highly intoxicated, and the forensic toxicologist testified that a person with a .22 blood alcohol level, as appellant had, will be disoriented, confused, and have muscle incoordination. Defense counsel conceded in summation that the evidence proved appellant was intoxicated at the time of the accident. Because the evidence was overwhelming to establish

-

aggravated involuntary manslaughter, evidence of the two DUI convictions could not have had any effect upon the guilt phase.

Admittedly, the two convictions would have affected the punishment stage; however, the Commonwealth was entitled to present evidence of appellant's prior convictions during the punishment stage.  The Commonwealth introduced certified copies of appellant's convictions, including a 1986 felony conviction in Virginia for shooting or throwing a missile at an occupied dwelling; a 1993 driving under the influence conviction from Fairfax County; a 1994 driving under the influence conviction from Calvin County, Alabama, that included a conviction for possessing marijuana for personal use; a 1996 disorderly conduct conviction; a 1997 criminal mischief conviction involving property valued at less that $250; and a January 7, 1997 driving under the influence conviction.  In addition, appellant's driving records from Alabama and Virginia were introduced. Because abundant evidence was introduced to prove that appellant was intoxicated and because appellant's entire criminal record was admissible in the punishment phase for consideration by the jury, the introduction of the prior DUI convictions at an earlier stage was not prejudicial.  Therefore, the admission of evidence of the Alabama and Virginia convictions of driving while intoxicated, under the circumstances of this case, was harmless error.

IV.  MOTION TO STRIKE THE EVIDENCE

Appellant made a motion to strike the evidence, alleging that the evidence was: (A) insufficient to prove "gross, wanton and culpable" driving behavior; and (B) insufficient to prove a causal relationship between his driving and the death of Holmes.

"On appeal, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences therefrom."  Barlow v. Commonwealth, 26 Va. App. 421, 428-29, 494 S.E.2d 901, 904 (1998).  So viewed, the record discloses the following:  (1) at the scene of the accident, Officer Lando detected a very strong odor of alcohol about appellant's person; (2) appellant did not perform field dexterity tests to the satisfaction of the police officer; (3) appellant took a breathalyzer test pursuant to the Virginia Implied Consent Law, and his test result showed a blood alcohol concentration of .22 grams per 210 liters of breath, almost three times the legal limit of .08; (4) Holmes' blood alcohol content was .13; (5) Dr. Anh Huynh, an expert in forensic toxicology, testified that .13% volume of alcohol means that in the three areas of vision, judgment, and ability to execute, the person would be a "little impaired"; however, Dr. Huynh further opined that the difference between .13 and .22 is "enormous" and that the "effects at .22 alcohol in the blood would be even more impairment in terms of execution because of the incoordinations of the muscle" and would produce "disorientation."  According to

-

Huynh, "when you get more than .2," it is difficult to execute basic driving maneuvers. Dr. Huynh testified that appellant would have had to have consumed at least ten beers to reach a blood alcohol level of .22. Appellant originally informed the officer that he had consumed only three beers; (6) Officer J.S. Scalici testified that if appellant's truck had not hit the motorcycle at the point of impact, the truck would have traveled into oncoming traffic on Horner Road, indicating that he was "cutting the corner" in making the left turn; such a maneuver violates Code § 46.2-846, which requires left turns to be "made from the right half of the roadway and as close as possible to the roadway's center line where it enters an intersection."

Commonwealth witnesses testified that Holmes had the green light. The evidence was sufficient for the jury to infer that appellant made the left turn on a red light or at least not on the green arrow. In fact, appellant admitted at trial that if westbound traffic on Occoquan Road had a green signal, there could have been no advance green arrow signaling eastbound traffic to turn left. The Commonwealth's evidence was competent, was not inherently incredible and was sufficient to prove appellant drove his vehicle in a "gross, wanton and culpable" manner.

Additionally, appellant contends that Holmes' conduct was the cause of the accident. The jury rejected this view of the evidence. In a prosecution brought under Code § 18.2-36.1, the

Commonwealth is required to prove "a causal connection between the driver's intoxication and the death of another person." Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1995). Generally, causation is an issue for the jury to decide. See Forbes v. Commonwealth, 27 Va. App. 304, 309, 498 S.E.2d 457, 459 (1998). The jury was instructed that the Commonwealth was required to prove "[t]hat as a result of driving under the influence the defendant unintentionally caused the death of Wayne Holmes."

The fact that Holmes had a blood alcohol concentration of .13 does not exonerate appellant. "[C]ontributory negligence has no place in a case of involuntary manslaughter." Bell v. Commonwealth, 170 Va. 597, 616, 195 S.E. 675, 683 (1938). "Only if the conduct of the decedent amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence." Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). The evidence does not support such a conclusion. Only if Holmes' conduct constituted the sole cause of the accident as a matter of law could the trial court strike the evidence. We hold that the trial court did not err in refusing to strike the evidence on this ground.

## V. JURY INSTRUCTION H

Finally, appellant contends the trial court erred in rejecting his proffered Instruction H concerning the causal

–

connection required to be shown between his intoxication and Holmes' death.

Without objection, the trial judge gave the following instruction:

Instruction No. 3

The defendant is charged with the crime of aggravated involuntary manslaughter. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:

1. That the defendant was driving a motor vehicle; and

2. That at the time he was under the influence of alcohol; and

3. That as a result of driving under the influence the defendant unintentionally caused the death of Wayne Holmes; and

4. That the defendant's conduct was so gross, wanton and culpable as to show a reckless disregard for human life.

If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first three elements of the offense charged but you do not find beyond a reasonable doubt that the defendant's conduct was so gross, wanton and culpable as to show a reckless disregard for human life then you shall find the defendant guilty of involuntary manslaughter, but you shall not fix the punishment until your verdict has been returned and further evidence is heard by you.

If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above offenses, then you shall find the defendant not guilty.

-

Appellant's tendered Instruction H only addressed element three, included in Instruction No. 3, above.  The proffered instruction provided:

Instruction No. H

The phrase "as a result of driving under the influence . . . causes the death," requires proof of causal connection between the driver's intoxication and the death of another person.  Therefore, even if you find beyond a reasonable doubt that the defendant was driving while intoxicated, he cannot be found guilty of either grade of involuntary manslaughter unless you also find, beyond a reasonable doubt a causal connection between the defendant's intoxication and the death of Wayne A. Holmes.

The causal connection required is a cause "which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury without which the result would not have occurred."

When defense counsel tendered Instruction "H," he stated that it explained what needed to be shown "for that one element--as a result of driving under the influence causing a death."

The Commonwealth's attorney objected to the instruction. He stated that "the only reason that the defense wants this element emphasized is because that underscores the theory of their case."  He further stated that the phrase "as a result of" did not need any further explanation.

The trial judge commented that it was a question of "whether you are emphasizing it or you are defining or

_

clarifying it." Holding that Instruction H said the same thing that Instruction No. 3 had already said, the trial judge found it redundant, and he refused the proffered instruction.

"[W]hen granted instructions fully and fairly cover a principle of law, the trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384, cert. denied, 469 U.S. 873 (1984). See also Cirios v. Commonwealth, 7 Va. App. 292, 303-04, 373 S.E.2d 164, 170 (1988) (holding the same). "[I]t is not desirable to multiply instructions. Moreover, any instruction that is given should relate to the specific evidence in the case, and should not incorrectly state the law or mislead the jury. . . . [T]he trial judge may properly refuse any instructions that are misleading or redundant." Diffendal v. Commonwealth, 8 Va. App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (internal quotations and citations omitted). In the instant case, the trial court refused appellant's Instruction H. Significantly, appellant made no objection to Instruction No. 3 granted by the trial court.

In comparing the causation element, Code § 18.2-36.1 uses the phrase: "As a result of driving under the influence in violation of subdivision (ii), (iii), or (iv) of § 18.2-266, unintentionally causes the death of another person." Instruction No. 3 used the phrase "that as a result of driving

-

under the influence defendant unintentionally caused the death

of Wayne A. Holmes."  The model jury instruction relating to the

charge uses the phrase "that as a result of driving under the

influence the defendant unintentionally caused the death of

(name of person)."  II Virginia Model Jury Instructions,

Criminal 33.660 (1998 repl. ed.).  Thus, the language used by

the trial court substantially tracked the language of Code

§ 18.2-36.1 and the Virginia Model Jury Instructions.

Instruction No. 3 adequately stated the elements of the offense.

The elements of conduct punishable as involuntary manslaughter

are precisely set forth by the General Assembly in Code

§ 18.2-36.1.

To the contrary, Instruction H did not provide the jury

with the proper legal standard by which to determine causal

connection.  The proper legal standard for conduct punishable

under Code § 18.2-36.1 was established by the legislature in

1989, when they passed the statute.  The standard was:  any

person who, as a result of driving under the influence in

violation of subdivision (ii), (iii), or (iv) of § 18.2-266

unintentionally, causes the death of another person, shall be

guilty of involuntary manslaughter.  The statute in clear and

unmistakable terms requires proof of causation, nothing more,

nothing less.  In Pollard, 20 Va. App. at 99, 455 S.E.2d at 286,

we explained that Code § 18.2-36.1's "very language . . .

requires proof of causation," and "[t]he phrase, 'as a result of

-

driving under the influence . . . causes the death,' requires proof of a causal connection between the driver's intoxication and the death of another person."  Pollard correctly ruled that the language of the statute requires proof of causation.  An instruction tracking the language in the statute is sufficient to require proof of causation.  Thus, Instruction H was repetitious.

Instruction No. 3 given by the trial court, without objection from appellant, stated the correct elements of the offense charged and was a correct finding instruction setting forth all the issues fully and fairly.

Moreover, the last paragraph of Instruction H was improper. It is applicable to civil cases and was taken from I Virginia Model Jury Instructions, Civil 5.000 (1998 repl. ed.).  The actual model instruction begins with the words:  "A proximate cause of an accident, injury, or damage."  Id.  In place of that phrase, appellant substituted in Instruction H the phrase "the causal connection."

In Hubbard, the Supreme Court stated, "[w]e think that by attempting to inject inapplicable principles of civil negligence into a criminal trial, Instructions B and C would have created confusion and would have been misleading.  Furthermore, they would have been duplicative."  243 Va. at 15, 413 S.E.2d at 882-83.  The same is true of Instruction H.  Accordingly, the

–

trial judge acted within his discretion when he rejected Instruction H.

For the foregoing reasons, we affirm appellant's conviction for aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B).

Affirmed.

Benton, J., dissenting.

I.

Franklin Eugene Hall was indicted for aggravated involuntary manslaughter and tried by a jury. In pertinent part, Code § 18.2-36.1 provides as follows:

> A. Any person who, as a result of driving under the influence in violation of subdivision (ii), (iii), or (iv) of [Code] § 18.2-266, unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
>
> B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more than twenty years, one year of which shall be a mandatory, minimum term of imprisonment.

"The statute's very language . . . requires . . . proof of a causal connection between the driver's intoxication and the death of another person." Pollard v. Commonwealth, 20 Va. App. 94, 99, 455 S.E.2d 283, 286 (1995); see also Castillo v. Commonwealth, 21 Va. App. 482, 494-95, 465 S.E.2d 146, 152 (1995).

Hall proposed the following jury instruction, which the trial judge refused:

> The phrase "as a result of driving under the influence . . . causes the death" requires proof of a causal connection between the driver's intoxication and the death of another person. Therefore, even if you find beyond a reasonable doubt that the

-

defendant was driving while intoxicated, he cannot be found guilty of either grade of involuntary manslaughter unless you also find, beyond a reasonable doubt a causal connection between the defendant's intoxication and the death of Wayne A. Holmes.

The causal connection required is a cause "which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury without which the result would not have occurred."

"A reviewing court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

"The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict, so far as it is competent for the court to assist them. The chief object contemplated in the charge of the judge is to explain the law of the case, to point out the essentials to be proved on the one side or the other, and to bring into view the relation of the particular evidence adduced to the particular issues involved. In his instructions the trial judge should inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled."

Cooper v. Commonwealth, 2 Va. App. 497, 500, 345 S.E.2d 775, 777 (1986) (citation omitted).

-

I would hold that the trial judge erred in refusing to give Hall's proposed instruction. The trial judge did "not [say Hall's] statement of the law is wrong." Instead, the trial judge ruled that Hall's instruction was redundant of the following instruction, offered by the Commonwealth:

> The defendant is charged with the crime of aggravated involuntary manslaughter. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
>
> 1. That the defendant was driving a motor vehicle; and
>
> 2. That at the time he was under the influence of alcohol; and
>
> 3. That as a result of driving under the influence the defendant unintentionally caused the death of Wayne Holmes; and
>
> 4. That the defendant's conduct was so gross, wanton and culpable as to show a reckless disregard for human life.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the above elements of the offense as charged, then you shall find the defendant guilty, but you shall not fix the punishment until your verdict has been returned and further evidence is heard by you.
>
> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first three elements of the offense as charged but you do not find beyond a reasonable doubt that the defendant's conduct was so gross, wanton and culpable as to show a reckless disregard for human life then you shall find the defendant guilty of involuntary manslaughter, but you shall not fix the punishment until your

-

> verdict has been returned and further
> evidence is heard by you.
>
> If you find that the Commonwealth has
> failed to prove beyond a reasonable doubt
> any of the above offenses, then you shall
> find the defendant not guilty.

The principle is well established that "[e]ach party is entitled to have jury instructions upon vital points in language chosen by it, if the instruction is a correct statement of the law." Broady v. Commonwealth, 16 Va. App. 281, 291, 429 S.E.2d 468, 474 (1993); see also Jeffress v. Virginia Ry. & Power Co., 127 Va. 694, 714, 104 S.E. 393, 399 (1920). Thus, "when a principle of law is vital to a defendant in a criminal case, a trial court has an affirmative duty properly to instruct a jury about the matter." Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991). The principle is equally well established that it is error not to instruct the jury on a point at issue when the jury may make findings based upon a mistaken belief of the law. See Martin v. Commonwealth, 218 Va. 4, 7, 235 S.E.2d 304, 305 (1977) (per curiam).

Hall's defense was that the motorcyclist's own actions were the proximate cause of his death. Because there was evidence from which the jury could have found that Hall turned when he had a green arrow, the issue of causal connection between Hall's intoxication and the accident was a significant issue for the jury to resolve. Yet, the finding instruction the Commonwealth offered and the trial judge gave the jury sparingly stated that

-

an element of the offense is "[t]hat as a result of driving under the influence [Hall] unintentionally caused the death." The instruction tendered by Hall was explanatory of this instruction and would have provided the jury the proper legal standard by which to determine the required causal connection. It was a more complete statement of the phrase, "as a result of driving," and was intended to inform the jury that the law requires more than mere proof that Hall was driving while intoxicated to establish a causal connection to the death. Thus, Hall's instruction was appropriate and warranted.

Indeed, the trial judge clearly recognized that other portions of the finding instruction were inadequate and gave instructions explaining to the jury two of the finding instruction's concepts. The jury was instructed concerning the phrase, "under the influence of alcohol," which is referenced in the second paragraph of the finding instruction. The trial judge told the jury that "[a] person is under the influence of alcohol if he has drunk enough alcoholic beverages to so affect his manner, disposition, speech, muscular movement, general appearance or behavior as to be apparent to observation." In addition, the judge elaborated on the fourth paragraph of the finding instruction by informing the jury that "[g]ross or culpable and wanton conduct is that which indicates a callous disregard of human life and of the probable consequences of that conduct."

_

Hall was no less entitled to have the jury fully instructed as to the requirements of a causal connection. The third paragraph of the finding instruction clearly did not adequately convey the requirement of causal connection. The refused instruction, as were these other clarifying instructions, was more explanatory and a fuller explication of the finding instruction. Indeed, the refused instruction was essential to properly inform the jury concerning the applicable law.

Furthermore, the Commonwealth's attorney rendered Hall's proposed instruction even more important when he told the jury the following in his closing argument:

> [A]s a result of being under the influence, [Hall] unintentionally caused the death of Mr. Holmes. Is there any doubt about that? He didn't set out that day to kill Mr. Holmes, but it was the instrumentality that he was operating while he was drunk that killed Mr. Holmes and there isn't any question about that.

Without Hall's proposed instruction, the jury could easily have failed to understand that to find Hall guilty of involuntary manslaughter, they had to find that his inebriation caused the accident, not just that he happened to be "drunk" when the accident occurred. For these reasons, I disagree with the majority's holding that the finding instruction adequately stated the elements of the offense. Accordingly, I would reverse the conviction and remand for a new trial.

-

The majority opinion also holds that the last paragraph of Hall's proposed instruction was improper because it was derived from civil model jury instructions. In so finding, the majority relies on Hubbard v. Commonwealth, 243 Va. 1, 413 S.E.2d 875 (1992). Hubbard, however, does not stand for the principle that language which properly defines a criminal law concept is improper simply because it is drawn from a civil jury instruction. The Supreme Court rejected Hubbard's proposed jury instructions because they inappropriately injected definitions of civil negligence in a case concerning criminal negligence. See id. at 15, 413 S.E.2d at 882-83 (holding "that by attempting to inject inapplicable principles of civil negligence into a criminal trial, Instructions B and C would have created confusion and would have been misleading").

Hall merely relied on the applicable language from a civil instruction for definitional support of a concept that is pertinent in both criminal and civil cases. Significantly, the trial judge did not rule that Hall's proposed instruction misstated the law. Likewise, the Commonwealth does not suggest that the instruction is an incorrect statement of the required causal relationship or that it would mislead the jury. Instead, the trial judge ruled, and the Commonwealth argues, that the instruction is improper because it is redundant and that Hall offered the instruction to "underscore[] the theory of [his] case."

-

Hall's theory of the case, however, was that the jury should be instructed upon "such language . . . [as was] in keeping with the law." Jeffress, 127 Va. at 714, 104 S.E. at 399. None of the instructions told the jury the Commonwealth had to prove a causal connection between Hall's inebriation and the death of Holmes. As the majority opinion notes, Pollard "correctly" held that Code § 18.2-36.1 requires proof of causation. See 20 Va. App. at 99, 455 S.E.2d at 286 (holding that the language of the statute clearly "requires . . . proof of a causal connection between the driver's intoxication and the death of another person"). "It is elementary that a jury must be informed as to the essential elements of the offense; a correct statement of the law is one of the essentials of a fair trial." Darnell, 6 Va. App. at 488, 370 S.E.2d at 719 (internal quotations and citations omitted).

## II.

I agree with the majority opinion that the trial judge erred in allowing the introduction in the Commonwealth's case-in-chief of testimony regarding Hall's prior convictions for driving under the influence of alcohol. I disagree, however, that other admissible evidence, proving Hall had been drinking, overshadowed the effect of the improperly admitted evidence. The uncontested evidence in the record proved that Hall's blood alcohol content measured .22 when tested at the police station. Although the evidence clearly proved that Hall

-

had been drinking, it did not clearly prove that Hall's drinking caused the accident.

The evidence in the record concerning the cause of the accident was disputed. The testimony of several witnesses who had no connection to either Hall or the motorcyclist provided a basis upon which the jury could have determined that Hall turned at a time when he was privileged to do so. No evidence proved that Hall was speeding or driving recklessly prior to the accident. Indeed, the evidence indicated Hall was stopped at the intersection ready to turn, seconds before the accident. The evidence also proved that the motorcyclist that collided with Hall in the intersection had a blood alcohol concentration of .13, a violation of Code § 18.2-266.

Proof that Hall had prior suspensions and convictions for driving under the influence could have led the jury to conclude that Hall was driving with a reckless disregard for human life in this instance. This inadmissible evidence was unduly prejudicial because it had the tendency to affect the manner in which the jury viewed the credibility of Hall and the witnesses who testified that the accident had another cause. It was not harmless because we "can[not] conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc). "While the other evidence amply supports the jury's

verdicts, the disputed testimony may well have affected the jury's decision."  Cartera v. Commonwealth, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).  Thus, the probative value of the improper evidence clearly did not outweigh its incidental prejudice.  See Guill v. Commonwealth, 255 Va. 134, 141-42, 495 S.E.2d 489, 492-93 (1998).

### III.

Finally, I agree with the majority that the trial judge erred in admitting the results of the "alco-sensor" breath alcohol test.  For all these reasons, I would reverse the conviction and remand for a new trial.