COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and Chaney
Argued by videoconference

UNPUBLISHED

FREDRICK JOSEPH PALKA, II

v.     Record No. 1716-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE GLEN A. HUFF
FEBRUARY 20, 2024

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul A. Dryer, Judge

Samantha Offutt Thames, Senior Appellate Counsel (Virginia
Indigent Defense Commission, on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following trial in the City of Waynesboro Circuit Court (the "trial court"), a jury convicted

Fredrick Joseph Palka, II ("appellant") of involuntary manslaughter, in violation of Code

§ 18.2-36.1, and driving while under the influence of alcohol, in violation of Code § 18.2-266. On

appeal, appellant argues that the trial court erred by (1) excluding evidence of the decedent's drug

and alcohol use and (2) screening appellant's voir dire questions before jury selection. For the

following reasons, this Court affirms.

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

On the evening of October 4, 2021, Daniel Summers was riding his motorcycle southeast on Delphine Avenue in Waynesboro when the minivan in front of him, driven by Christina Royston, made an abrupt U-turn. Summers crashed into the minivan's rear bumper and "flew forward off of the bike." The bike remained in the middle of the southeast-bound lane. Royston parked her minivan in her driveway near the accident site. When Summers approached Royston to confront her, she "rush[ed] up on" him "aggressively" causing him to back into the street. As Royston pursued Summers into the street she was struck by appellant's vehicle.[2] Summers testified that the collision between appellant's vehicle and Royston "happened so fast to where there were no brakes applied."

Bradley Green was traveling towards the accident site when he saw something in the road "when [he] was fairly far away."[3] As he approached, he determined it was a motorcycle, some debris, and a person—Summers—in the road. Green stopped his car and exited to see if Summers needed assistance, at which time he heard Summers and Royston arguing.[4] He then saw Royston enter the roadway to engage with Summers before a car traveling westbound struck her and continued driving down the road. Green testified that he "felt like the car . . . was

---

[1] We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires that we "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[2] Summers' toe was also run over.

[3] Multiple witnesses corroborated Green's testimony that the objects and debris in the road could be seen from a fair distance away.

[4] Multiple witnesses also testified that they saw Royston and Summers arguing on the side of the road.

slowing down, but then it became apparent that they weren't going to stop or make an effort to stop."

Appellant was later found by law enforcement at a nearby gas station. He "appeared to be pretty shaken up," his vehicle showed extensive damage to the front windshield and bumper, and he smelled of alcohol.[5] After admitting to drinking approximately 15 minutes prior to the collision, and failing multiple field sobriety checks, appellant was arrested for driving under the influence of alcohol.

A 9:56 p.m. breath test conducted at the police station showed that he had a breath alcohol content of 0.20 grams per 210 liters of breath. During a subsequent interview appellant stated that he had four shots of some type of alcohol in his vehicle before driving home after leaving work at 7:15 p.m. When discussing the collision, appellant stated that he did not see anything in the road and that the first thing he noticed was something hitting his windshield. He did not see any vehicles stopped in the road and acknowledged that, while he was not sure, there might have been a second person in the area. He also admitted to drinking daily after work and described his drive home as "being on cruise control." A blood alcohol test conducted at 12:41 a.m. the next morning showed that appellant had a blood alcohol content of 0.199 by volume.

Before trial, appellant moved to introduce a certificate of analysis showing that Royston had ethanol (0.082 by volume), amphetamines, tetrahydrocannabinol ("THC"), and THC carboxylic acid in her blood on the night of her death. The Commonwealth objected arguing that such evidence was irrelevant. The trial court excluded this certificate finding that Royston's conduct—standing in the road while under the influence of drugs and alcohol—"was a 'contributing cause' of the accident, but not an independent, intervening cause." The trial court

---

[5] Appellant's driver's side mirror was also broken off.

further found that, even if the certificate of analysis was relevant, the likelihood of jury confusion substantially outweighed the evidence's probative value because it "would cause the jury to believe that it is tasked with deciding whether [Royston] or [appellant] was more at fault." Appellant proffered the excluded evidence to the trial court and further proffered that, if allowed, an expert witness would have testified about how the substances in Royston's blood would have affected her conduct.

At this same hearing, appellant objected to submitting his voir dire questions for advance review by the trial court. He argued that the 2020 legislative amendments to Code § 19.2-262.01 do not permit the trial court to screen these questions because the statute "gives counsel . . . the right to ask any person or juror directly any relevant question . . . but it does not permit the court to intervene." The trial court overruled his objection, finding that "the scope and grounds of jury examination" remained "substantially the same" as before the amendments and that earlier caselaw allowed for advance screening. After conducting voir dire, but before the jury was seated, appellant renewed his objection noting that the trial court had struck one of his proposed questions.[6] The trial court again overruled appellant's objection, explaining that the struck question—asking "if there was anything else that any of the jurors could think of that would render them incapable of rendering a fair and impartial decision"—was "overly broad." The trial court then seated the jury. As part of the evidence at trial, the parties stipulated that Royston died of "blunt force trauma to the head and extremities" caused when appellant struck her with his vehicle. The Commonwealth did not present any additional evidence on causation. The jury found appellant guilty of involuntary manslaughter and driving while under the influence. The

---

[6] Appellant's proposed questions and the trial court's ruling on those questions are not part of the record on appeal.

- 4 -

trial court sentenced appellant to 10 years and 12 months' imprisonment with 5 years, 11 months, and 25 days suspended.

This appeal followed.

## ANALYSIS

### I.  Admissibility of Evidence

Appellant argues the trial court erred by excluding the evidence of Royston's intoxication at the time of the incident.  "It is well-settled that '[d]ecisions regarding the admissibility of evidence "lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion."'"  *Nottingham v. Commonwealth*, 73 Va. App. 221, 231 (2021) (alteration in original) (quoting *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019)). "A court has abused its discretion if its decision was affected by an error of law or was one with which no reasonable jurist could agree."  *Tomlin v. Commonwealth*, 74 Va. App. 392, 409 (2022) (citing *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).  Relevant evidence is "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence."  Va. R. Evid. 2:401.  Generally, evidence must be relevant to be admissible.  Va. R. Evid. 2:402.  Even relevant evidence can be excluded if "the probative value of the evidence is substantially outweighed by (i) the danger of unfair prejudice, or (ii) its likelihood of confusing or misleading the trier of fact."  Va. R. Evid. 2:403(a).

Appellant argues that evidence of Royston's alcohol and drug use was relevant to proving that her conduct was an intervening cause of her death.  To support a conviction under Code § 18.2-36.1, the Commonwealth was required to prove "a causal connection between [appellant's] intoxication" and Royston's death.  *Hall v. Commonwealth*, 32 Va. App. 616, 632 (2000) (en banc) (quoting *Pollard v. Commonwealth*, 20 Va. App. 94, 99 (1995)).  Royston's conduct can exonerate appellant only if it "amount[ed] to an independent, intervening act" that

- 5 -

"alone caus[ed] the fatal injury." *Hubbard v. Commonwealth*, 243 Va. 1, 14 (1992) (citing *Mayo v. Commonwealth*, 218 Va. 644, 647 (1977)). The act must not be "reasonably foreseeable" to qualify as an intervening act. *Hawkins v. Commonwealth*, 64 Va. App. 650, 655 (2015) (quoting *Gallimore v. Commonwealth*, 246 Va. 441, 447 (1993)). Mere contributory negligence, by contrast, "has no place in a case of involuntary manslaughter." *Hall*, 32 Va. App. at 632 (quoting *Bell v. Commonwealth*, 170 Va. 597, 616 (1938)).

The trial court did not abuse its discretion in excluding the certificate of analysis pertaining to Royston. Appellant's intervening cause theory is that Royston, while intoxicated, ran in front of appellant's car without time for him to stop, causing her death independent of any fault by appellant. Royston's essential conduct is uncontested, however. The Commonwealth did not dispute that Royston ran into the road shortly before appellant hit her. In other words, the parties informed the jury of Royston's relevant *conduct* that formed the crux of appellant's defense. The trial court properly held that *why* Royston ran into the street—whether due to intoxication or something else—was irrelevant to any jury consideration about the legal effect of her actions. Accordingly, the trial court did not abuse its discretion in determining that the certificate of analysis did not make appellant's defense any more or less likely than without the evidence.

Appellant's attempt to distinguish *Hubbard* is unavailing. Indeed, the case for exclusion is even stronger here than in *Hubbard*. There, the Supreme Court upheld the trial court's exclusion of evidence concerning the blood alcohol content of another driver who had been killed in an accident with the defendant. *Hubbard*, 243 Va. at 10-15. But the trial court in *Hubbard* had excluded evidence not only of the victim's level of impairment but also evidence that the victim had driven erratically because the victim's conduct was in dispute. *Id.* at 11. The parties disputed, for example, whether the victim was driving in the lane of oncoming traffic at

the time of the accident.  *Id.* at 12.  In affirming, the Supreme Court reasoned that evidence of the victim's impairment did no more than support the speculative "possibility" that the victim had been driving erratically and, in any event, would not prove that the defendant could not still have taken evasive action to avoid the collision.  *Id.* at 13.  Appellant is correct that, in this case, the evidence he seeks would not fuel speculation about whether Royston acted erratically.  But that is because, unlike in *Hubbard*, Royston's erratic conduct is undisputed.[7]  Accordingly, this Court concludes that the trial court did not abuse its discretion by excluding the toxicology evidence.

## II.  Voir Dire

Appellant contends that the trial court improperly reviewed his voir dire jury questions prior to voir dire of the jury panel.  In 2020, the General Assembly enacted Code § 19.2-262.01, which provides in relevant part, that:

---

[7] Appellant also errantly relies on *Williams v. Commonwealth*, 228 Va. 347 (1984), and *Miller v. Commonwealth*, No. 1776-13-1 (Va. Ct. App. Oct. 28, 2014).  In *Williams*, the Supreme Court upheld the trial court's refusal of a jury instruction stating that the jury could find the decedent's "intoxication and actions" to be the "proximate cause of his death."  228 Va. at 348-49.  The Court held that the proposed instruction usurped the factfinder's prerogative to the extent it assumed intoxication and that other instructions adequately explained the concept of intervening cause.  *Id.*  Nothing in *Williams* aids appellant's case.

Similarly, *Miller* is an unpublished case from this Court concerning the exclusion of a malicious wounding victim's BAC at trial when the victim had been riding a motorcycle and was allegedly struck by the defendant in a road rage incident.  *Miller*, slip op. at 2-4.  This Court reversed the exclusion of the *Miller* victim's BAC at the time of the accident, finding "the evidence [about the cause of the accident] was largely circumstantial" and the victim's BAC "had a logical tendency to prove or disprove whether the [defendant] caused the accident that resulted in [the victim's] injuries, or whether [the victim's] own conduct was an 'independent, intervening' cause of the crash."  *Id.* at 5-6 (citing *Hubbard*, 243 Va. at 14).  While unpublished opinions may be cited as informative and "considered for their persuasive value"—*Miller* is neither.  *Smith v. Commonwealth*, 78 Va. App. 371, 383 n.4 (2023) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)); Rule 5A:1(f).  The *Miller* victim was operating a motorcycle at the time of the accident and there was conflicting testimony as to the circumstances at the time of the accident.  *Miller*, slip op. at 6.  Here, Royston was on foot and multiple witnesses testified to appellant's failure to slow down prior to, or stop after, the collision.  Because the facts here are distinguishable from *Miller*, and because the collision here had multiple witnesses, *Miller* is neither informative nor persuasive.

> In any criminal case, the court and counsel for either party shall have the right to examine under oath any person who is called as a juror . . . and shall have the right to ask such person or juror directly any relevant question to ascertain whether the juror can sit impartially in either the guilt or sentencing phase of the case.

This language now substantially tracks the language in Code § 8.01-358, which governs voir dire in civil cases. Appellant argues that this law prohibits the trial court from screening counsel's jury questions before voir dire. He admits that "the terms of the Code section do not expressly prohibit" advance screening but nonetheless argues that "the General Assembly meant to grant attorneys greater autonomy in voir dire." This Court reviews questions of statutory interpretation de novo. *Focke v. Commonwealth*, 77 Va. App. 366, 372 (2023) (citing *Commonwealth v. Leone*, 286 Va. 147, 150 (2013)).

Appellant emphasizes that the Code allows an attorney to ask a potential juror "any relevant question." While he stresses the word "any," this Court could just as easily stress the word "relevant." Such language plainly leaves open the possibility that a trial court may prohibit irrelevant questions. Indeed, appellant submits that the proper procedure would have been for opposing counsel to object during voir dire to any potentially problematic questions. Nothing in Code § 19.2-262.01 requires this procedure. Appellant does not explain why the trial court's practice of addressing concerns about specific voir dire questions *before* voir dire impaired his rights more than if the trial court addressed these same concerns during voir dire.[8] Nor does he identify any relevant questions that the trial court excluded, rendering any potential error harmless. *See Haas v. Commonwealth*, 299 Va. 465, 543 (2021) (noting that, when evaluating non-constitutional harmless error, this Court "determine[s] whether there has been a fair trial on the merits and whether substantial justice has been reached" (alteration in original)).

---

[8] In fact, appellant concedes that "the policy concerns raised by [the] trial court were important." Policy concerns were to allow the trial court more time to resolve disputes and to make the jury selection process "more orderly and efficient" by not disrupting it with objections.

Accordingly, the trial court did not commit reversible error by requiring the parties to submit their voir dire questions before the trial date.

## CONCLUSION

For the foregoing reasons, this Court affirms the judgment of the trial court.

*Affirmed.*