UPON A REHEARING EN BANC
FITZPATRICK, Chief Judge.
Franklin Eugene Hall (appellant) was convicted in a jury trial of aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B). Appellant argued that the trial court erred in: (1) admitting the results of the preliminary alcosensor test; (2) allowing testimony during the Commonwealth’s case-in-chief that appellant was previously convicted of an unrelated offense of driving under the influence; (3) denying his motion to strike the evidence; and (4) refusing appellant’s jury instruction on causation. A divided panel of this Court reversed appellant’s conviction and remanded the case for a new trial. See Hall v. Commonwealth, Record No. 1280-984, 1999 WL 1133268, September 28, 1999. On the Commonwealth’s motion, we stayed the mandate of that decision and granted a rehearing en banc. Upon rehearing en banc, we find no reversible error and affirm appellant’s conviction.
I. FACTS
On February 2, 1997, shortly after 8:00 p.m., a pickup truck driven by appellant and a motorcycle driven by Wayne A. Holmes collided at the intersection of Occoquan and Homer Roads in Prince William County. Holmes died in the crash. In the Commonwealth’s case-in-chief, Mike Arnold testified that he was driving about forty miles per hour westbound on Occoquan Road in the left lane and he was slowing down as he approached an intersection. Arnold said he was fifty feet *622 from the intersection at Horner Road when he saw in his rearview mirror a motorcycle approaching in the right lane. He testified that the traffic light at the intersection controlling his travel direction was green. As Arnold slowed, the motorcycle continued in the right lane past his car. Arnold testified that a pickup truck, driven by appellant eastward on Occoquan Road, made a left turn onto Horner Road, across the westbound travel lanes of Occoquan Road. Arnold testified that he was thirty feet away from the intersection when the truck turned, that the truck had given no turn signal, and that the truck did not make a proper turn — “it cut the corner.” Arnold saw the collision between the motorcycle and the truck. He estimated that thirty seconds passed between the time he first-saw the motorcycle in his rearview mirror and the time of the collision.
Connie Stewart was a passenger in a car, which turned onto Occoquan Road at Route One and began travelling westbound toward Horner Road. She saw the motorcycle turn onto westbound Occoquan Road from Route One. The car in which Stewart was a passenger was travelling west in the left lane of Occoquan Road, and the motorcycle was travelling west in the right lane of Occoquan Road. As the car in which Stewart was riding was moving at thirty-five miles per hour, the motorcycle passed the car. The motorcyclist gave a hand signal and drove into the left westbound lane. The motorcyclist passed a car in the right westbound lane, gave a hand signal, and moved again to the right westbound lane. Stewart estimated the speed of the motorcycle as forty to forty-five miles per hour. Stewart testified that as they were approaching the intersection, the light “had turned green.” Her car was in the left travel lane, and the motorcycle was in the right travel lane. As the motorcycle passed to the right of a vehicle in front of Stewart’s car, Stewart “saw the motorcycle flying up in the air.” She did not witness the actual collision and said it was dark at the time of the accident.
Officer J.S. Scalici, who examined the crash scene one-half hour following the accident, opined that if appellant’s truck had not hit the motorcycle at the point of impact, the truck *623 would have traveled into oncoming traffic on Horner Road. The officer testified that the motorcycle was .travelling between thirty-five and forty miles per hour and that appellant’s truck was travelling between thirty and thirty-five miles per hour. He admitted, however, that his estimates of speed were “guess[es].”
When the officer interviewed appellant, appellant said he was returning from a bowling alley when the accident occurred. After the officer told appellant the bowling alley was in the opposite direction, appellant said he left the bowling alley, went to a friend’s house, and was returning from the friend’s house when the accident occurred. Appellant told the officer he had consumed three beers between 5:15 p.m. to 8:00 p.m. The officer also testified that appellant “had an odor of a strong alcohol beverage about his person.”
When the officer made inquiry concerning appellant’s driving status, appellant gave him an Alabama driver’s license. Appellant said the license was suspended for failure to pay fines, that he had just returned from Alabama, and that “he had taken care of the fines.” When the officer asked appellant if he had ever had a Virginia driver’s license, appellant responded that he had not. Over objection, the officer testified that he told appellant the Department of Motor Vehicles records indicated appellant’s Virginia driver’s license had been suspended for a conviction. When asked about the conviction, the officer testified that appellant’s Virginia license was suspended for “DWI” and that appellant’s Alabama license had been revoked “for driving while intoxicated,” not for failure to pay fines. Appellant unsuccessfully objected to the introduction of evidence concerning the prior convictions.
Officer Christopher Lando testified that he arrived at the accident scene at 8:30 p.m., obtained appellant’s Alabama driver’s license, and determined that it was suspended. When he asked appellant to complete a “statement form,” appellant wrote that “ ‘[he] was taking a left on’ — ‘[he] had the green’— ‘[he] was making a left’ — ‘[Holmes] hit [him].’ ” After Lando “detected a very strong odor of an alcoholic beverage about *624 [appellant’s] person” and was told by appellant that he had consumed three beers at a bowling alley, he had appellant perform several “field dexterity tests.” Appellant was unsuccessful in those tests. Lando testified that he then gave appellant a “field alco-sensor test,” which he identified as a device that can determine a person’s blood alcohol concentration at the scene of the accident. Appellant objected to testimony concerning the results of the alco-sensor test. The trial judge overruled the objection. Lando then testified that when appellant’s reading reached .200, he stopped the test and arrested appellant. After the officer transported appellant to the police headquarters, appellant’s breath was again tested and indicated an alcohol content of .22.
A forensic toxicologist tested fluid recovered from Holmes’ body and concluded that Holmes’ blood alcohol level was .13. He agreed that at .13, a person’s “vision, judgment, and ability to execute or act on that judgment ... would be a little impaired.” He further testified that at .22, appellant’s blood alcohol level, a person would suffer “incoordination of the muscle, ... disorientation, ... [a]nd confusion.” Over appellant’s objection, the toxicologist opined that a man of appellant’s size would have to have consumed “more than 10 beers” to reach an alcohol level of .22.
At the conclusion of the Commonwealth’s case, appellant testified that he went to a friend’s house after leaving the bowling alley on the night of the accident. He left the friend’s house and drove east on Occoquan Road. When he arrived at the intersection with Horner Road, he was in the left turn lane and the light was red. He testified that when the light controlling his travel lane turned to a green arrow, he turned left and was struck by a motorcycle. On cross-examination, appellant conceded that he had consumed more than three beers that night and was not sure how many beers he actúally had. Appellant testified he had a prior felony conviction.
Elizabeth Tuialana testified that prior to the collision, she was driving north on Horner Road in the left lane. As she approached the intersection of Horner and Occoquan Roads, *625 intending to turn left onto westbound Occoquan Road, the light controlling her lane of travel turned yellow. She stopped before entering the intersection because the light turned red. She saw a truck on Occoquan Road ready to turn onto Horner Road. After looking into her rearview mirror to see if her friend was behind her, she saw a truck on Occoquan Road turning onto Horner Road, saw “something coming down Occoquan and then the accident occurred.” She recalled that the accident occurred within “a matter of seconds” of the time she arrived at the intersection.
Rachael Robinson testified that she was behind Tuialana’s car going north on Horner Road. She stopped when Tuialana stopped, and she recalled that the light was yellow. When she stopped, she saw a truck stopped on Occoquan Road to her left in a turning lane. She testified that the accident then occurred within “seconds. It was fairly quickly.”
John Olivo, a traffic signal supervisor for the Virginia Department of Transportation (VDOT), testified to the signal sequence at the intersection. He stated that after the signal light controlling Horner Road traffic turns red, if a vehicle is in the left turn lane at Occoquan Road, the next sequence of lights would display a green turn arrow for that lane of travel. The green arrow would be displayed for seven to twelve seconds, depending on the number of vehicles in the turn lane. He also testified it was impossible for the green turn arrow to display while a solid green light is displaying for traffic coming from the opposite direction. After a maximum of twelve seconds, the green arrow becomes yellow for four seconds and then becomes a solid green ball. He also testified that it was possible for a green turn arrow to display if a vehicle was also making a left turn coming from the opposite direction.
At the conclusion of all the evidence, the trial judge refused an instruction tendered by appellant concerning the statutory element of causation that must be shown between appellant’s intoxication and the death of Holmes. The trial judge ruled that the tendered instruction was redundant because the finding instruction contained the requisite elements of the *626 offense. Following its deliberations, the jury convicted appellant of aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B).
II. EVIDENCE OF ALCO-SENSOR TEST
Following the collision, the police officer used an “alcosensor” to perform a preliminary test of appellant’s breath-alcohol content. Over appellant’s objection, the trial judge permitted the officer to testify concerning the result of appellant’s preliminary breath test. Appellant contends that Code § 18.2-267 bars that testimony in a prosecution under Code § 18.2-36.1. The Commonwealth argues that Code § 18.2-267 only bars introduction of the results of the test in a prosecution under Code § 18.2-266 or Code § 18.2-266.1.
The Commonwealth indicted and tried appellant for aggravated manslaughter, which is statutorily defined as follows:
A. Any person who, as a result of driving under the influence in violation of subdivision (ii), (in), or (iv) of [Code] § 18.2-266, unintentionally causes the death of another person, shall be guilty of involuntary manslaughter.
B. If, in addition, the conduct of the defendant was so gross, wanton and culpable as to show a reckless disregard for human life, he shall be guilty of aggravated involuntary manslaughter, a felony punishable by a term of imprisonment of not less than one nor more that twenty years, one year of which shall be a mandatory, minimum term of imprisonment.
Code § 18.2-36.1.
Code § 18.2-267(A) permits a preliminary breath analysis of a “person who is suspected of a violation of [Code] § 18.2-266 or [Code] § 18.2-266.1.” However, another provision of that statute states that “[t]he results of the breath analysis shall not be admitted into evidence in any prosecution under [Code] § 18.2-266 or [Code] § 18.2-266.1, the purpose of this section being to permit a preliminary analysis of the alcoholic content of the blood of a person suspected of having violated the *627 provisions of [Code] § 18.2-266 or [Code] § 18.2-266.1.” Code § 18.2-267(E).
The manslaughter statute under which appellant was tried expressly references a violation of Code § 18.2-266 as the predicate for the prosecution of aggravated manslaughter. By the express wording of the statute, a prosecution for a violation of Code § 18.2-36.1 is necessarily a “prosecution under [Code] § 18.2-266.” Code § 18.2-267(E). The Commonwealth can prove a violation of Code § 18.2-36.1 if and only if it proves a violation of Code § 18.2-266. Thus, we hold that Code § 18.2-267(E) applies to bar introduction of the results of the preliminary analysis because a prosecution under Code § 18.2-36.1 includes as an element of the offense proof of a violation of Code § 18.2-266. Accordingly, under the circumstances of this case, the trial court erred in admitting the results of the preliminary alco-sensor breath test.
However, our inquiry does not end there. We must decide whether the error requires reversal. Our determination of whether the error is harmless is guided by familiar principles. Non-constitutional error “is harmless ‘[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.’ ” Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (quoting Code § 8.01-678) (emphasis added in Lavinder). To determine whether an error is harmless, the Court “must review the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues.” Id. at 1007, 407 S.E.2d at 912. “An error does not affect a verdict if a reviewing court can conclude, without usurping the jury’s fact finding function, that, had the error not occurred, the verdict would have been the same.” Id. at 1005, 407 S.E.2d at 911. We have further said:
‘Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of *628 the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution’s case.”
Sargent v. Commonwealth, 5 Va.App. 143, 154, 360 S.E.2d 895, 901 (1987) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 674, 106 S.Ct. 1431, 1432, 89 L.Ed.2d 674 (1986)).
Applying the standard articulated in Lavinder, we conclude that the error was harmless because appellant suffered no prejudice and had the error not occurred, the verdict would have been the same. See Lavinder, 12 Va.App. at 1005, 407 S.E.2d at 911. During the Commonwealth’s case-in-chief, the actual breath test result taken pursuant to the Virginia Implied Consent Law was introduced into evidence without objection. The test result indicated a blood alcohol content of .22, reflecting a higher concentration of alcohol than that obtained from the preliminary alco-sensor test. Accordingly, the error in admitting the results from the preliminary alcosensor test was harmless.
III. EVIDENCE OF UNRELATED DUI CONVICTIONS
Next, appellant contends the trial court erred in allowing testimony, of his other unrelated convictions for driving under the influence of alcohol. The Commonwealth argues that this evidence, although proving a prior criminal act, was admissible because appellant’s lie about the status of his license was proof of consciousness of guilt. We disagree that the evidence was admissible for that purpose.
As a general rule, evidence that an accused has committed a criminal offense other than that charged in the indictment is inadmissible. That is because such evidence confuses one offense with the other, unfairly surprises the defendant with a charge he is unprepared to meet, and, by showing that the accused has a criminal propensity, tends to reverse his presumption of innocence of the crime on trial.
*629 Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 892-93 (1983).
The evidence concerning the prior convictions was not offered to prove an element of the offense. “[I]t is improper to use evidence that a defendant has committed another crime when it has ‘no connection with the one under investigation ... [because those] other acts of criminality ... are not legally relevant and should not be [used] to prejudice the defendant or to create a probability of guilt.’ ” Guill v. Commonwealth, 255 Va. 134, 140, 495 S.E.2d 489, 492 (1998) (citation omitted).
Although we find that the trial court erred in admitting evidence of the unrelated convictions for driving under the influence of alcohol, “this does not automatically entitle ... [the defendant] to a reversal of his conviction. ‘A conviction should not be reversed unless the introduction of improper evidence suggests a manifest probability that it was prejudicial to the defendant.’ ” Rider v. Commonwealth, 8 Va.App. 595, 600, 383 S.E.2d 25, 27 (1989) (citations omitted).
We, therefore, look to the evidence to see if the improperly admitted evidence of appellant’s prior convictions had any effect upon the guilty verdict of the jury. We acknowledge the prejudicial tendency of introducing evidence in this aggravated involuntary manslaughter prosecution that appellant had two prior DUI convictions and that his license to operate a motor vehicle was suspended, particularly where, as here, that appellant’s driving intoxicated caused the homicide. However, even though prejudicial, on this record we find the evidence of appellant’s guilt to have been so overwhelming that the jury could not have reached any other verdict. Thus, because the inadmissible evidence did not affect the verdict, we find the error harmless. See Lavinder, 12 Va.App. at 1005, 407 S.E.2d at 911. On this record, had the error not occurred, we conclude that the verdict would have been the same.
The effect the evidence of the two DUI convictions had upon the jury was completely overshadowed by other evidence in the record that appellant’s intoxication caused the accident *630 and homicide. Officer Lando smelled “a very strong odor of alcoholic beverage” upon appellant’s breath at the accident scene. Appellant failed the field sobriety tests administered by the officer. His blood alcohol level was .22 on the breathalyzer test administered under the Virginia Implied Consent Law. Dr. Huynh, an expert in forensic toxicology employed by the Department of Criminal Justice for the Commonwealth of Virginia, compared the breath results of appellant and Holmes and explained that the difference between the two was “enormous.” Dr. Huynh further testified that appellant would have had to drink at least ten beers to reach .22, whereas appellant told the police officer that he had consumed only three glasses of beer.
The testimonies of several eyewitnesses and of the VDOT traffic supervisor prove that appellant turned, in violation of the traffic control signal, into the path of the victim’s motorcycle. The blood alcohol test proved that, at the time, appellant was highly intoxicated, and the forensic toxicologist testified that a person with a .22 blood alcohol level, as appellant had, will be disoriented, confused, and have muscle incoordination. Defense counsel conceded in summation that the evidence proved appellant was intoxicated at the time of the accident. Because the evidence was overwhelming to establish aggravated involuntary manslaughter, evidence of the two DUI convictions could not have had any effect upon the guilt phase.
Admittedly, the two convictions would have affected the punishment stage; however, the Commonwealth was entitled to present evidence of appellant’s prior convictions during the punishment stage. The Commonwealth introduced certified copies of appellant’s convictions, including a 1986 felony conviction in Virginia for shooting or throwing a missile at an occupied dwelling; a 1993 driving under the influence conviction from Fairfax County; a 1994 driving under the influence conviction from Calvin County, Alabama, that included a conviction for possessing marijuana for personal use; a 1996 disorderly conduct conviction; a 1997 criminal mischief conviction involving property valued at less that $250; and a Janu *631 ary 7, 1997 driving under the influence conviction. In addition, appellant’s driving records from Alabama and Virginia were introduced. Because abundant evidence was introduced to prove that appellant was intoxicated and because appellant’s entire criminal record was admissible in the punishment phase for consideration by the jury, the introduction of the prior DUI convictions at an earlier stage was not prejudicial. Therefore, the admission of evidence of the Alabama and Virginia convictions of driving while intoxicated, under the circumstances of this case, was harmless error.
IV. MOTION TO STRIKE THE EVIDENCE
Appellant made a motion to strike the evidence, alleging that the evidence was: (A) insufficient to prove “gross, wanton and culpable” driving behavior; and (B) insufficient to prove a causal relationship between his driving and the death of Holmes.
“On appeal, we view the evidence in the light most favorable to the Commonwealth and grant to it all reasonable inferences therefrom.” Barlow v. Commonwealth, 26 Va.App. 421, 428-29, 494 S.E.2d 901, 904 (1998). So viewed, the record discloses the following: (1) at the scene of the accident, Officer Lando detected a very strong odor of alcohol about appellant’s person; (2) appellant did not perform field dexterity tests to the satisfaction of the police officer; (3) appellant took a breathalyzer test pursuant to the Virginia Implied Consent Law, and his test result showed a blood alcohol concentration of .22 grams per 210 liters of breath, almost three times the legal limit of .08; (4) Holmes’ blood alcohol content was .13; (5) Dr. Anh Huynh, an expert in forensic toxicology, testified that .13% volume of alcohol means that in the three areas of vision, judgment, and ability to execute, the person would be a “little impaired”; however, Dr. Huynh further opined that the difference between .13 and .22 is “enormous” and that the “effects at .22 alcohol in the blood would be even more impairment in terms of execution because of the incoordinations of the muscle” and would produce “disorientation.” According to Huynh, “when you get more than .2,” it is difficult to execute *632 basic driving maneuvers. Dr. Huynh testified that appellant would have had to have consumed at least ten beers to reach a blood alcohol level of .22. Appellant originally informed the officer that he had consumed only three beers; (6) Officer J.S. Scalici testified that if appellant’s truck had not hit the motorcycle at the point of impact, the truck would have traveled into oncoming traffic on Horner Road, indicating that he was “cutting the corner” in making the left turn; such a maneuver violates Code § 46.2-846, which requires left turns to be “made from the right half of the roadway and as close as possible to the roadway’s center line where it enters an intersection.”
Commonwealth witnesses testified that Holmes had the green light. The evidence was sufficient for the jury to infer that appellant made the left turn on a red light or at least not on the green arrow. In fact, appellant admitted at trial that if westbound traffic on Occoquan Road had a green signal, there could have been no advance green arrow signaling eastbound traffic to turn left. The Commonwealth’s evidence was competent, was not inherently incredible and was sufficient to prove appellant drove his vehicle in a “gross, wanton and culpable” manner.
Additionally, appellant contends that Holmes’ conduct was the cause of the accident. The jury rejected this view of the evidence. In a prosecution brought under Code § 18.2-36.1, the Commonwealth is required to prove “a causal connection between the driver’s intoxication and the death of another person.” Pollard v. Commonwealth, 20 Va.App. 94, 99, 455 S.E.2d 283, 286 (1995). Generally, causation is an issue for the jury to decide. See Forbes v. Commonwealth, 27 Va.App. 304, 309, 498 S.E.2d 457, 459 (1998). The jury was instructed that the Commonwealth was required to prove “[t]hat as a result of driving under the influence the defendant unintentionally caused the death of Wayne Holmes.”
The fact that Holmes had a blood alcohol concentration of .13 does not exonerate appellant. “[Cjontributory negligence has no place in a case of involuntary manslaugh *633 ter.” Bell v. Commonwealth, 170 Va. 597, 616, 195 S.E. 675, 683 (1938). “Only if the conduct of the decedent amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence.” Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). The evidence does not support such a conclusion. Only if Holmes’ conduct constituted the sole cause of the accident as a matter of law could the trial court strike the evidence. We hold that the trial court did not err in refusing to strike the evidence on this ground.
V. JURY INSTRUCTION H
Finally, appellant contends the trial court erred in rejecting his proffered Instruction H concerning the causal connection required to be shown between his intoxication and Holmes’ death.
Without objection, the trial judge gave the following instruction:
Instruction No. 3
The defendant is charged with the crime of aggravated involuntary manslaughter. The Commonwealth must prove beyond a reasonable doubt each of the following elements of that crime:
1. That the defendant was driving a motor vehicle; and
2. That at the time he was under the influence of alcohol; and
3. That as a result of driving under the influence the defendant unintentionally caused the death of Wayne Holmes; and
4. That the defendant’s conduct was so gross, wanton and culpable as to show a reckless disregard for human life.
If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt each of the first three elements of the offense charged but you do not find beyond a reasonable doubt that the defendant’s conduct was so gross, wanton and culpable as to show a reckless disregard *634 for human life then you shall find the defendant guilty of involuntary manslaughter, but you shall not fix the punishment until your verdict has been returned and further evidence is heard by you.
If you find that the Commonwealth has failed to prove beyond a reasonable doubt any of the above offenses, then you shall find the defendant not guilty.
Appellant’s tendered Instruction H only addressed element three, included in Instruction No. 3, above. The proffered instruction provided:
Instruction No. H
The phrase “as a result of driving under the influence ... causes the death,” requires proof of causal connection between the driver’s intoxication and the death of another person. Therefore, even if you find beyond a reasonable doubt that the defendant was driving while intoxicated, he cannot be found guilty of either grade of involuntary manslaughter unless you also find, beyond a reasonable doubt a causal connection between the defendant’s intoxication and the death of Wayne A. Holmes.
The causal connection required is a cause “which in the natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury without which the' result would not have occurred.”
When defense counsel tendered Instruction “H,” he stated that it explained what needed to be shown “for that one element — as a result of driving under the influence causing a death.”
The Commonwealth’s attorney objected to the instruction. He stated that “the only reason that the defense wants this element emphasized is because that underscores the theory of their case.” He further stated that the phrase “as a result of’ did not need any further explanation.
The trial judge commented that it was a question of “whether you are emphasizing it or you are defining or clarifying it.” Holding that Instruction H said the same thing that Instruc *635 tion No. 3 had already said, the trial judge found it redundant, and he refused the proffered instruction.
“[W]hen granted instructions fully and fairly cover a principle of law, the trial court does not abuse its discretion in refusing another instruction relating to the same legal principle.” Stockton v. Commonwealth, 227 Va. 124, 145, 314 S.E.2d 371, 384, cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984). See also Cirios v. Commonwealth, 7 Va.App. 292, 303-04, 373 S.E.2d 164, 170 (1988) (holding the same). “[I]t is not desirable to multiply instructions. Moreover, any instruction that is given should relate to the specific evidence in the case, and should not incorrectly state the law or mislead the jury____ [T]he trial judge may properly refuse any instructions that are misleading or redundant.” Diffendal v. Commonwealth, 8 Va.App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (internal quotations and citations omitted). In the instant case, the trial court refused appellant’s Instruction H. Significantly, appellant made no objection to Instruction No. 3 granted by the trial court.
In comparing the causation element, Code § 18.2-36.1 uses the phrase: “As a result of driving under the influence in violation of subdivision (ii), (in), or (iv) of § 18.2-266, unintentionally causes the death of another person.” Instruction No. 3 used the phrase “that as a result of driving under the influence defendant unintentionally caused the death of Wayne A. Holmes.” The model jury instruction relating to the charge uses the phrase “that as a result of driving under the influence the defendant unintentionally caused the death of (name of person).” II Virginia Model Jury Instructions, Criminal 33.660 (1998 repl. ed.). Thus, the language used by the trial court substantially tracked the language of Code § 18.2-36.1 and the Virginia Model Jury Instructions. Instruction No. 3 adequately stated the elements of the offense. The elements of conduct punishable as involuntary manslaughter are precisely set forth by the General Assembly in Code § 18.2-36.1.
*636 To the contrary, Instruction H did not provide the jury with the proper legal standard by which to determine causal connection. The proper legal standard for conduct punishable under Code § 18.2-36.1 was established by the legislature in 1989, when they passed the statute. The standard was: any person who, as a result of driving under the influence in violation of subdivision (ii), (Hi), or (iv) of § 18.2-266 unintentionally, causes the death of another person, shall be guilty of involuntary manslaughter. The statute in clear and unmistakable terms requires proof of causation, nothing more, nothing less. In Pollard, 20 Va.App. at 99, 455 S.E.2d at 286, we explained that Code § 18.2-36. l’s “very language ... requires proof of causation,” and “[t]he phrase, ‘as a result of driving under the influence ... causes the death,’ requires proof of a causal connection between the driver’s intoxication and the death of another person.” Pollard correctly ruled that the language of the statute requires proof of causation. An instruction tracking the language in the statute is sufficient to require proof of causation. Thus, Instruction H was repetitious.
Instruction No. 3 given by the trial court, without objection from appellant, stated the correct elements of the offense charged and was a correct finding instruction setting forth all the issues fully and fairly.
Moreover, the last paragraph of Instruction H was improper. It is applicable to civil cases and was taken from I Virginia Model Jury Instructions, Civil 5.000 (1998 repl. ed.). The actual model instruction begins with the words: “A proximate cause of an accident, injury, or damage.” Id. In place of that phrase, appellant substituted in Instruction H the phrase “the causal connection.”
In Hubbard, the Supreme Court stated, “[w]e think that by attempting to. inject inapplicable principles of civil negligence into a criminal trial, Instructions B and C would have created confusion and would have been misleading. Furthermore, they would have been duplicative.” 243 Va. at 15, 413 S.E.2d at 882-83. The same is true of Instruction H. Accordingly, *637 the trial judge acted within his discretion when he rejected Instruction H.
For the foregoing reasons, we affirm appellant’s conviction for aggravated involuntary manslaughter, in violation of Code § 18.2-36.1(B).

Affirmed.