UPON REHEARING EN BANC
McCLANAHAN, J.
By published opinion dated October 19, 2004, a divided panel of this Court affirmed the judgment of the trial court. Stevens v. Commonwealth, 44 Va.App. 122, 603 S.E.2d 642 (2004). We stayed the mandate of that decision and granted a rehearing en banc, 44 Va.App. 414, 605 S.E.2d 329 (2004). Upon rehearing en banc, it is ordered that the stay of the mandate is lifted, and the judgment of the trial court is affirmed.
David Alan Stevens appeals-his conviction for aggravated involuntary manslaughter in violation of Code § 18.2-36.1. He contends that the trial court erred by: (1) failing to foreclose prosecution of the aggravated involuntary manslaughter charge on the ground that the Commonwealth did not comply with the procedural requirements of a driving under the influence (DUI) charge; (2) failing to exclude a hospital toxicology report based on insufficient proof of reliability; (3) failing to instruct the jury on criminal negligence; and (4) finding the evidence sufficient to prove he was guilty of aggravated involuntary manslaughter. For the reasons that follow, we affirm the trial court.
I. Background
On appeal, we review the evidence in the light most favorable to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). That principle requires us to “discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.” Kelly v. Commonwealth, 41 Va.App. 250, 254, 584 S.E.2d 444, 446 (2003) (en banc) (citations omitted).
*241 So viewed, on June 29, 2002, appellant struck an automobile driven by Barry Childers while Childers was turning left at an intersection. As a result, Heather Watson, a passenger in Childers’ vehicle, was killed. Volunteer rescue workers treated appellant at the scene, and appellant told one of them that he had come from a bar and had been drinking “lots and lots and lots.” Appellant was transported to a local hospital emergency room. Appellant’s hospital admission records show that appellant stated he had consumed “between 12—24 beers” and “[more than] 18 beers” prior to the accident.
After the accident, the Loudoun County Sheriffs Office dispatched Deputy Chris Coderre to the hospital to arrest appellant. Appellant was waiting to undergo a Computed Axial Tomography scan when Coderre located him. Coderre said he could clearly smell alcohol in the room that appellant was in, the smell being especially obvious in the hospital’s sterile environment. After the scan, Coderre spoke to appellant and informed him that he was under arrest for DUI. Coderre read the implied consent law to appellant,[1] explained the procedure, and asked him to submit to a blood test, to which appellant agreed. Coderre watched a hospital lab technician draw two vials of appellant’s blood, then seal, package, tape, and initial them. Once the blood was drawn, Coderre informed appellant of his right to an independent analysis of the blood sample, asked him if he wished to have it done, and, if so, to sign the form authorizing the test. Coderre offered appellant the form and his pen, upon which appellant stated, “I’m too f—ed up. I can’t sign sh—.” Coderre kept the form with a vial of appellant’s blood and took it with him when he left the hospital. The form and blood sample remained locked in the trunk of Coderre’s police cruiser until the following Monday when Coderre submitted it *242 to the Department of Forensic Sciences for testing. An analysis of this blood sample showed appellant’s blood alcohol content was .21. The hospital’s blood toxicology report indicated that appellant’s blood alcohol content was .24 or .25. On July 1, 2002, the Commonwealth charged appellant with driving under the influence, pursuant to Code § 18.2-266, and aggravated involuntary manslaughter, pursuant to Code § 18.2-36.1.
At a pretrial hearing, the trial court suppressed the implied consent law blood sample analysis and precluded the Commonwealth from using the presumption of intoxication pursuant to Code § 18.2-269. The trial court based its ruling on a finding that the Commonwealth had failed to arrest appellant within the statutorily mandated period after the incident as required by Code § 18.2-268.2.[2] The court also ruled that appellant had not properly been provided the form requesting independent analysis of the blood sample. The court therefore dismissed prosecution of charges under Code § 18.2-266(DUI) but allowed the Commonwealth to proceed with prosecution under Code § 18.2-36.1 (aggravated involuntary manslaughter). After a jury trial, appellant was convicted of aggravated involuntary manslaughter and sentenced to fifteen years in prison.
II. Analysis
A. Implied Consent Law Procedural Violations Do Not Require Dismissal of an Aggravated Involuntary Manslaughter Charge
An aggravated involuntary manslaughter conviction under Code § 18 .2-36.1 requires a finding that the defendant was driving under the influence of either alcohol or drugs or a combination of alcohol and drugs, as specified in clauses (ii), *243 (iii) or (iv) of Code § 18.2-266. The implied consent law governs procedural steps for conducting breath and blood tests for the prosecution of DUI charges.
Appellant argues that a prosecution for aggravated involuntary manslaughter is inherently a prosecution for DUI; thus, the implied consent law procedures apply.[3] At the time of appellant’s arrest, these procedures required the arresting officer to give the accused a form indicating how he could obtain an independent analysis of the blood sample drawn.[4] Appellant argues that because he did not receive the independent analysis form, the trial court should have dismissed the aggravated manslaughter charge.[5]
*244 We disagree. Even if failure to comply with the implied consent law procedural requirements does not forbid a prosecution for aggravated manslaughter, blood test results are not required for a conviction under either Code §§ 18.2-266 or 18.2-36.1.[6]
Neither Code § 18.2-268.6 nor any of the other implied consent law statutes refer to Code § 18.2-36.1. Code §§ 18.2-268.2, -268.3, -268.4, -268.5, -268.8, -268.9 and -268.10 include specific language that they apply to violations of Code §§ 18.2-266 or -266.1 or a similar ordinance,[7] but none of those code sections mention Code § 18.2-36.1.[8] Only Code § 18.2-268.3 applies its provisions to an additional statute, specifically, Code § 18.2-51.4, maiming as a result of driving while intoxicated. Additionally, Code § 18.2-51.4 specifically provides that the implied consent law provisions apply upon *245 arrest for a violation of that code section.[9] Had the General Assembly intended to require the implied consent law procedures and its related statutory provisions for a prosecution under Code § 18.2-36.1, it would have specifically provided so; however, it did not. See Jordan v. South Boston, 138 Va. 838, 844-45, 122 S.E. 265, 267 (1924) (“Courts cannot read into a statute something that is not within the manifest intention of the legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret.” (internal quotations and citation omitted)). The omission, in this context, makes it apparent that the legislature did not require those procedural hurdles.
Furthermore, blood test results are not required to prove intoxication for prosecution under clauses (ii), (iii) or (iv) of Code § 18.2-266, and, by extension, therefore, are not required for prosecution under Code § 18.2-36.1. See Oliver v. Commonwealth, 40 Va.App. 20, 24, 577 S.E.2d 514, 516 (2003) (“Test results from a breath or blood test are not necessary or required to prove driving under the influence of alcohol or drugs.”). Only clause (i) of Code § 18.2-266, the per se statute predicating guilt on blood alcohol content alone, requires blood test results. Code § 18 .2-36.1 does not require that the Commonwealth establish a violation of clause (i) of Code § 18.2-266; it only requires a violation of clauses (ii), (iii) or (iv). If the General Assembly intended to require a blood test for prosecution for involuntary manslaughter, it would have tied the involuntary manslaughter statute to clause (i) and not just clauses (ii), (iii), and (iv). Thus, “ ‘the result of a [blood] analysis is but auxiliary proof which may tend to corroborate evidence of the objective symptoms [of being under the influence of alcohol].’ ” Thurston v. Lynchburg, 15 Va.App. 475, 483, 424 S.E.2d 701, 705-06 (1992) (quoting *246 Brooks v. City of Newport News, 224 Va. 311, 315-16, 295 S.E.2d 801, 804 (1982)). In this case, there was sufficient evidence of objective symptoms that would allow a fact finder to conclude that appellant was under the influence of alcohol: (1) appellant admitted to consuming twelve to twenty-four beers; (2) Coderre and two other witnesses smelled a “strong odor” of alcohol when in the appellant’s presence; (3) when asked if he had been drinking, appellant answered yes, “lots and lots and lots”; and, (4) at the hospital, appellant stated that he was “too f—ed up” and couldn’t sign anything. Such evidence is enough to support a finding of intoxication, and, therefore, a violation of Code § 18.2—266(ii), (iii) or (iv), without the blood test.
B. The Court Did Not Err in Admitting the Hospital Toxicology Report
Appellant argues that, because the Commonwealth failed to affirmatively show a reliable foundation for the hospital toxicology report, it was error for the court to admit it into evidence. We disagree.
Appellant concedes that Code § 19.2-187.02[10] addresses the hearsay nature of the hospital records, but contends that it does not overcome or eliminate the requirements that admission of scientific evidence must be based on a proper foundation. However, “[wjhether the foundation is sufficient is a question within the sound discretion of the trial judge. If the judge finds the foundation sufficient, the credibility of the witnesses and the weight to be accorded the evidence are matters within the province of the [fact finder].” Essex v. Commonwealth, 228 Va. 273, 285, 322 S.E.2d 216, 223 (1984). In this case, the trial court did not abuse its discretion in admitting the hospital toxicology report.
*247 Appellant also contends that in spite of the statute allowing admission of hospital blood tests, those tests must also meet the requirements of Code § 18.2-268.5, which relate to the handling of blood samples taken pursuant to the implied consent law. Blood tests performed by medical personnel in a hospital emergency room are not subject to the requirements of Code § 18.2-268.5. That statute applies only to blood drawn under the implied consent law. The statute begins, “[f]or purposes of this article ...which clearly and strictly limits its application only to DUI prosecutions.
C. The Court Did Not Err in Denying Appellant’s Proposed Jury Instructions
Appellant argues that the trial court erred by denying three of his proposed jury instructions, “W,” “Y,” and “Z.” He contends that the denial of these instructions prevented him from presenting his theory of the case to the jury. Instruction “W” describes three degrees of negligence: ordinary, willful, and criminal. Instructions “Y” and “Z” raise the issue of whether Watson’s death was directly caused by appellant’s actions.
“A reviewing court’s responsibility in reviewing jury instructions is ‘to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.’ ” Darnell v. Commonwealth, 6 Va.App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)). When reviewing a trial judge’s decision refusing a proffered jury instruction, “ ‘[t]he appropriate standard of review requires that we view the evidence with respect to the refused instruction in the light most favorable to [the proponent of the instruction].’ ” Hartigan v. Commonwealth, 31 Va.App. 243, 257, 522 S.E.2d 406, 412 (1999) (quoting Boone v. Commonwealth, 14 Va.App. 130, 131, 415 S.E.2d 250, 251 (1992)).
The jury instructions approved by the trial court in this case are the same as those upheld by this Court in Hall, 32 Va.App. 616, 529 S.E.2d 829. In Hall, we noted that these *248 instructions “substantially tracked the language of Code § 18.2-36.1 and the Virginia Model Jury Instructions” and that they “adequately stated the elements of the offense.” Id. at 635, 529 S.E.2d at 839. As in Hall, the trial court was justified in approving an instruction that clearly and simply stated the elements of the crime and the findings that were necessary for a conviction.
The trial court did not abuse its discretion in refusing to admit instruction “W,” as it would not have clarified any element of the law and could have confused the jury by introducing additional issues not present in the law under which appellant was prosecuted. Instructions “Y” and “Z” were properly refused as another instruction already dealt with the issues of causation. These additional instructions would have been needlessly redundant. “[I]t is not desirable to multiply instructions. Moreover, any instruction that is given should relate to the specific evidence in the case and should not incorrectly state the law or mislead the jury---[T]he trial judge may properly refuse any instructions that are misleading or redundant.” Diffendal v. Commonwealth, 8 Va.App. 417, 423, 382 S.E.2d 24, 26-27 (1989) (internal quotations and citations omitted). We hold that the trial court did not abuse its discretion in deciding to refuse the instructions.
D. The Evidence Was Sufficient As a Matter of Law
When the sufficiency of the evidence is challenged on appeal, “ “we presume the judgment of the trial court to be correct’ and reverse only if the trial court’s decision is ‘plainly wrong or without evidence to support it.’ ” Kelly, 41 Va.App. at 257, 584 S.E.2d at 447 (quoting Davis v. Commonwealth, 39 Va.App. 96, 99, 570 S.E.2d 875, 876-77 (2002)); see also McGee v. Commonwealth, 25 Va.App. 193,197-98, 487 S.E.2d 259, 261 (1997) (en banc). This means the jury’s verdict cannot be overturned on appeal unless no “ ‘rational trier of fact’ ” could have come to the conclusion it did. Kelly, 41 Va.App. at 257, 584 S.E.2d at 447 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)); see also Seaton v. Commonwealth, 42 Va.App. 739, 746, 595 S.E.2d 9, *249 13 (2004); Pease v. Commonwealth, 39 Va.App. 342, 355, 573 S.E.2d 272, 278 (2002) (en banc) (“We let the decision stand unless we conclude no rational juror could have reached that decision.”), aff'd, 266 Va. 397, 588 S.E.2d 149 (2003). A reviewing court does not “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.” Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2789 (emphasis in original and citation omitted). We must instead ask whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Kelly, 41 Va.App. at 257, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789) (emphasis in original and internal quotations omitted); see also Hoambrecker v. City of Lynchburg, 13 Va.App. 511, 514, 412 S.E.2d 729, 731 (1992). “ ‘This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.’ ” Kelly, 41 Va.App. at 257-58, 584 S.E.2d at 447 (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789).
Appellant argues that the evidence presented at trial was insufficient to prove: (1) that he was intoxicated; (2) that he caused Watson’s death; and (3) that his conduct was gross, wanton, and culpable. There is sufficient evidence in the record on each of these elements to support the jury’s decision to convict.
Appellant first argues that the Commonwealth did not prove he was intoxicated. On the contrary, the hospital toxicology report revealed that appellant’s blood alcohol content was .24 or .25, approximately three times the legal limit in Virginia. The Commonwealth presented expert testimony on the mental and physical effects that normally accompany a blood alcohol content greater than .20. There was evidence that appellant asked after the accident, “What did I hit?,” admitted he did not remember the accident, that he consumed between twelve and twenty-four beers, and that after the accident he stated that he was “too f—ed up” and couldn’t *250 sign anything. Witnesses also testified that appellant was mumbling, disoriented, and had a strong odor of alcohol about his person. Finally, the Commonwealth presented evidence that there was a lack of skid marks at the scene of the accident, from which the jury could conclude that appellant’s driving behavior at the time of the accident was wanton and reckless and was affected by his intoxicated state. Thus, the record contains sufficient evidence for the jury to conclude that appellant was intoxicated.
Appellant next argues that the evidence was insufficient to prove that he caused Watson’s death. He contends that the Commonwealth only proved that he struck the vehicle Watson was riding in and that evidence was insufficient to prove that her death was caused by his intoxication. Appellant claims that Childers’ testimony was inconsistent and that Childers was at fault because he should have seen and yielded to appellant’s vehicle. The Commonwealth presented evidence that Childers’ vehicle had the right-of-way and that appellant ran a red light. Childers testified that he had received a green arrow before he began turning his vehicle. The Commonwealth also presented an expert in traffic signals who testified that if Childers received a green arrow, appellant would have faced a red light at the time of the accident. Appellant presented no evidence that would prevent any reasonable juror from believing the testimony of Childers or the expert witness. The lack of skid marks—indicating appellant’s failure to stop or slow down before the impact—could also lead the jury to conclude that appellant’s failure to notice the other car before striking it caused the accident. Therefore, the record contains sufficient evidence to allow the jury to conclude that appellant’s driving while intoxicated caused Watson’s death.
Appellant also argues with regard to causation that Childers’ testimony is inconsistent with a finding that he had the right-of-way. Appellant contends that because Childers did not see appellant’s car before entering the intersection, he could not have been attentive to the traffic signal. However,
*251 All of the authorities agree that contributory negligence has no place in a case of involuntary manslaughter [and] if the criminal negligence of the [accused] is found to be the cause of the death, [he] is criminally responsible, whether the decedent’s failure to use due care contributed to the injury or not. Bell v. Commonwealth, 170 Va. 597, 616, 195 S.E. 675, 683 (1938).
Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. Mayo v. Commonwealth, 218 Va. 644, 647, 238 S.E.2d 831, 833 (1977). In such case, the conduct of the accused becomes a remote cause. Delawder v. Commonwealth, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973).
Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992). Therefore, the conduct of another party plays no part in the case, unless that conduct is proven to be an independent, intervening cause, rendering the defendant’s negligence so remote it ceases to be a proximate cause of the accident. Appellant did not prove such in this case.
Finally, appellant argues that the evidence was insufficient for the jury to find him guilty of gross, wanton, and culpable conduct. Appellant relies on Jetton v. Commonwealth, 2 Va.App. 557, 561, 347 S.E.2d 141, 144 (1986), in which this Court held that in order to find gross, wanton, and culpable conduct, multiple factors are required other than intoxication to show such conduct. Appellant asserts that the only relevant conduct to be considered is that he ran a red light. He contends that single act is so common an occurrence that it fails to rise to the level of gross, wanton, and culpable conduct.
While aggravated involuntary manslaughter convictions often involve multiple acts exhibiting gross, wanton, and culpable conduct, a single act is sufficient to establish such conduct. In Hall, this Court upheld an aggravated involuntary manslaughter conviction upon facts that are substantially similar to the instant case. Hall, 32 Va.App. at 616, 529 S.E.2d at *252 829. In that case, the appellant was convicted after his truck collided with a motorcycle, killing the cyclist. Id. at 621, 529 S.E.2d at 832. In Hall, the only conduct attributed to the appellant was having a blood alcohol content greater than .20 and running a red light. This Court ruled that “[t]he Commonwealth’s evidence was competent, was not inherently incredible and was sufficient to prove appellant drove his vehicle in a ‘gross, wanton and culpable’ manner.” Id. at 632, 529 S.E.2d at 837.
Neither intoxication nor running a red light alone may be sufficient to establish gross, wanton, and culpable conduct. However, the combination of appellant’s extreme intoxication, ignoring traffic signals and running a red light, striking a vehicle without slowing down or braking and asking, “What did I hit?,” is sufficient evidence for a jury to find gross, wanton, and culpable conduct.
Accordingly, the record clearly provides sufficient evidence for a jury to conclude that appellant knowingly engaged in conduct “so gross, wanton and culpable as to show a reckless disregard of human life,” which proximately caused the accident and resulted in Watson’s death.
III. Conclusion
We hold that the trial court did not err in permitting prosecution of the aggravated involuntary manslaughter charge under Code § 18.2-36.1, admitting the hospital toxicology report, or by refusing appellant’s proffered jury instructions. We also conclude that the record includes sufficient evidence for a jury to convict appellant of aggravated involuntary manslaughter. Therefore, we affirm the judgment of the trial court.

Affirmed.

. Code § 18.2-268.2, the implied consent law, provides that any person operating a motor vehicle on a highway in the Commonwealth is deemed, as a condition of operating the vehicle, to have consented to have samples of his or her blood, breath, or both blood and breath, taken and tested for purposes of determining its alcohol and/or drug content.

. At the time of the incident, pursuant to Code § 18.2-268.2, consent was implied if the arrest was made within two hours of the alleged offense. In 2002, the General Assembly amended that statute to allow implied consent if the arrest was made within three hours of the alleged offense.

. Based on the holding in Hall v. Commonwealth, 32 Va.App. 616, 529 S.E.2d 829 (2000) (en banc), appellant contends that the trial court should have dismissed the aggravated manslaughter charge under Code § 18.2-36.1 on the ground that the Commonwealth did not comply with Code § 18.2-268.6. While it is true that Hall stands for the proposition that a prosecution under Code § 18.2-36.1 is necessarily a prosecution under Code § 18.2-266, the application of the rule in Hall is much narrower than appellant argues. Id. at 627, 529 S.E.2d at 835. The holding in Hall is limited to cases where inadmissible evidence is used to prove a violation of Code § 18.2-266 as a predicate to the involuntary manslaughter charge. Id. In Hall, the Court dismissed the involuntary manslaughter charge because the preliminary breath test analysis was admitted to prove a violation of Code § 18.2-266, in direct contravention of Code § 18.2-267(E), which provides that such results "shall not be admitted into evidence...." Id. That is not the case here.

. In 2003, the General Assembly amended Code § 18.2-268.6 to eliminate the provision requiring the arresting officer to give the accused a form setting forth the procedures for obtaining an independent analysis of the blood sample. See Va. Acts, chs. 933, 936. Stevens was charged before the amendment took effect, and, therefore, the amendment does not apply in this case.

. Appellant argues that Artis v. City of Suffolk, 19 Va.App. 168, 450 S.E.2d 165 (1994), and Shoemaker v. Commonwealth, 18 Va.App. 61, 441 S.E.2d 354 (1994), support his contention that the officer’s failure to ensure that appellant received the form is fatal to his conviction. Artis held that merely showing a form to the accused is insufficient to comply with the requirement that the form be given to the accused and, therefore, requires dismissal of the DUI charge. Artis, 19 Va.App. at 170-71, 450 S.E.2d at 166-67. Shoemaker held that failure to substantially comply with Code § 18.2-268.6 required dismissal of the DUI charge on the rationale that independent test results could have provid *244 ed the accused with exculpatory evidence. Shoemaker, 18 Va.App. at 64, 441 S.E.2d at 356. However, in both of those cases, the defendant was charged with DUI under Code § 18.2-266, not with aggravated involuntary manslaughter under Code § 18.2-36.1, the statute at issue in the instant case. While failure to substantially comply with the procedural requirements for testing blood and breath samples under the implied consent law may bar the Commonwealth from a prosecution under the DUI statute (Code § 18.2-266) and may bar the Commonwealth from using those test results, that failure does not bar prosecution for aggravated involuntary manslaughter under Code § 18.2-36.1.

. Given our holding, we need not address the Commonwealth's alternative arguments: that there was no violation of the implied consent law; that only substantive violations of the implied consent law are relevant for the purposes of applying that statute; or, even if the violations are substantive, the proper remedy is not to dismiss the charge, but to rebut or suppress the evidence.

. We note that the legislature used the word "ordinance" and not "statute,” removing any argument that Code § 18.2-36.1 is included under that language.

. It is not necessary for the other implied consent law statutes to recite the statutes to which they apply because they are either definitional (Code § 18.2-268.1), or they refer back to other provisions of the implied consent law (Code §§ 18.2-268.6, 18.2-268.7 and 18.2-268.11). In 2004, the General Assembly added Code § 18.2-272 to most of the statutes cited above; see Va. Acts, ch. 1013.

. It is important to note that Code § 18.2-51.4 is the equivalent of Code § 18.2-36.1(B), except that it applies in cases of "serious bodily injury of another person resulting in permanent and significant physical impairment” instead of death and provides for a different felony classification.

. Code § 19.2-187.02 states that "the written results of blood alcohol tests conducted upon persons receiving medical treatment in a hospital emergency room are admissible in evidence as a business records exception to the hearsay rule in prosecutions” for violations of several named code provisions, including Code § 18.2-36.1, involuntary manslaughter resulting from driving while intoxicated.