COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Chafin, Malveaux and Senior Judge Frank
Argued at Norfolk, Virginia


BILLY JOE MAURICE

v.      Record No. 0644-15-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT P. FRANK
OCTOBER 18, 2016


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
William R. O'Brien, Judge

Richard C. Clark, Senior Assistant Public Defender, for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Billy Joe Maurice, appellant, was convicted in a bench trial of abduction with the intent

to defile in violation of Code § 18.2-48.[1]  On appeal, he contends the trial court erred in finding

the evidence sufficient to prove the victim's detention was separate and apart from the restraint

inherent in the sex offenses.  For the reasons stated, we affirm.

BACKGROUND

When presented with a sufficiency challenge on appeal, we review the evidence in the

"light most favorable" to the Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578

S.E.2d 781, 786 (2003).  Viewing the record through this evidentiary prism requires us to

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant pled guilty to aggravated sexual battery, indecent liberties, and attempted
rape/forcible sodomy or inanimate or animate sexual penetration.  None of these convictions are
before this Court.

true all the credible evidence favorable to the Commonwealth and all inferences to be drawn therefrom." Kelley v. Commonwealth, 289 Va. 463, 467-68, 771 S.E.2d 672, 674 (2015) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

Maranda Becker shared a two-bedroom apartment with Adrian Johnson (her fiancé), Arthur Johnson (a male relative of the fiancé), appellant, and Becker's two daughters. Becker's two-year-old daughter, D.R., the victim, shared a bedroom with her infant sister.

On November 1, 2013, Becker left her two daughters in the apartment with appellant. Becker, Arthur Johnson, and Becker's sister went to the grocery store. Adrian Johnson was at work. When Becker left the apartment, both girls were in the living room and appellant was at the dining room table. D.R. was wearing a striped shirt and a pull-up.

Approximately one hour later, Becker, her sister, and Arthur Johnson returned to the apartment complex. Becker heard a child screaming. She grabbed the groceries and climbed the stairs to her apartment. When she realized the screaming was coming from her apartment, she kicked the door, but it did not open. She dropped the groceries to unlock the door. Becker could tell it was D.R. screaming, and she had never heard D.R. scream and cry so loudly and intensely.

When Becker entered the apartment into the living room, she saw no one in the living room area. She also saw a baby gate had been placed between the living room and the bedrooms. The baby gate was not erected when Becker left to go to the grocery store. Becker also saw that the doors to the two bedrooms and the bathroom were closed. Those doors were open when Becker left. Becker testified D.R. could not open the bedroom doors, but she could close those doors.

Becker opened the door to her daughters' bedroom first, and she saw her infant daughter was sleeping in her crib. D.R. was not in this bedroom. Becker then opened her own bedroom door, and she saw appellant on her bed in a push-up position over D.R. Appellant's left hand

was "on the back of [D.R.]'s neck" and his right hand was on the bed. Becker saw appellant "moving up and down" on top of D.R. Becker screamed profanities at appellant. Appellant jumped up immediately and pulled up his pants. D.R. was no longer wearing her pull-up. The pull-up was on the corner of the bed. When confronted with his actions, appellant told Becker he did nothing wrong. He also said D.R. had entered the bedroom first and he followed her into the room.

Becker promptly took D.R. to Sentara Leigh Hospital where she was referred to the Children's Hospital of the King's Daughters. Dr. Norrell Atkinson, a child abuse pediatrician, examined D.R. and she found hemorrhaging around both of her eyes, consistent with heavy crying. She also noted a significant amount of redness along D.R.'s back and her buttocks, consistent with frictional rubbing.

On a follow-up visit one week later, Dr. Atkinson saw bruising on D.R.'s back and right posterior thigh. Dr. Atkinson described the back bruises as "two circular oval shaped bruises to her right upper back and right lower back." She stated the back of D.R.'s right thigh had three "circular oval shaped bruises" that were in a "triangular configuration." Dr. Atkinson opined that the bruising was consistent with adult fingers pressing down on D.R. She stated that such bruising is "typically left by an adult's finger when a child is either forcefully grabbed or--or held down." Dr. Atkinson further characterized the bruises as "blunt force trauma to the skin," stating that one would have to press on the child's skin with enough force to break the blood vessels beneath the skin to cause this type of bruising.

The Commonwealth argued appellant took D.R. into the back bedroom. The trial court indicated there was no evidence to support that statement. However, the trial court concluded:

> [Appellant]'s pinning her down. He's also--he has left bruises on
> her--her back and her legs and arms, I believe. That's not
> necessary to perform a sex act, is to bruise somebody up. The fact

- 3 -

that the door was closed and there was an attempt that this was in--
in secret, this act . . . occurred in secret.

This appeal followed.

ANALYSIS

Appellant contends no evidence showed any restraint separate and apart from the sex offenses.[2]

"When a defendant on appeal challenges the sufficiency of the evidence to sustain a conviction, we must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it." Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008) (citing Code § 8.01-680; Commonwealth v. Jenkins, 255 Va. 516, 520, 499 S.E.2d 263, 265 (1998)). This Court does not substitute its judgment for that of the trier of fact. See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992). A reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Rather, "[t]he issue upon appellate review is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Maxwell v. Commonwealth, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008) (quoting Jackson, 443 U.S. at 319).

Code § 18.2-47(A) provides that "[a]ny person who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes another

---

[2] The underlying legal principle is double jeopardy, *i.e.* multiple punishments for the same offense. See Brown v. Commonwealth, 230 Va. 310, 312-13, 337 S.E.2d 711, 712-13 (1985).

person with the intent to deprive such other person of his personal liberty . . . shall be deemed guilty of 'abduction.'"

> "Whether an abduction is merely incidental to another crime is a question of law. However, because no two crimes are exactly alike, determining whether an abduction is incidental necessarily requires consideration of the historical facts of each case." Hoyt v. Commonwealth, 44 Va. App. 489, 496 n.4, 605 S.E.2d 755, 758 n.4 (2004). Therefore, the trial court's findings of historical fact are controlling but we review the court's application of those facts to the law *de novo*. Smith v. Commonwealth, 56 Va. App. 711, 721, 697 S.E.2d 14, 19 (2010).

Epps v. Commonwealth, 66 Va. App. 393, 402, 785 S.E.2d 792, 796 (2016).

"[T]he General Assembly did not intend to make the kind of restraint which is an intrinsic element of crimes such as rape, robbery, and assault a criminal act, punishable as a separate offense." Brown, 230 Va. at 314, 337 S.E.2d at 713.

> [O]ne accused of abduction by detention and another crime involving restraint of the victim, both growing out of a continuing course of conduct, is subject upon conviction to separate penalties for separate offenses only when the detention committed in the act of abduction is separate and apart from, and not merely incidental to, the restraint employed in the commission of the other crime.

Id. at 314, 337 S.E.2d at 713-14.

"The only issue when abduction is charged alongside an offense for which detention is an intrinsic element is whether any detention exceeded the minimum necessary to complete the required elements of the other offense." Lawlor v. Commonwealth, 285 Va. 187, 225, 738 S.E.2d 847, 869 (2013). The question is whether "there is sufficient evidence to support the finding . . . that [appellant] used greater restraint than was necessary to commit" the sexual offenses. Powell v. Commonwealth, 261 Va. 512, 541, 552 S.E.2d 344, 360-61 (2001). "We therefore need only consider whether the evidence in this case proves detention separate and apart from [the sexual offenses]." Lawlor, 285 Va. at 225-26, 738 S.E.2d at 869.

The evidence established that when Becker left the apartment, D.R. and D.R.'s infant sister were in the living room and appellant was at a table in the adjoining dining room. The doors to the daughters' bedroom and to Becker's bedroom were open. There was open access between the living/dining room area and the bedrooms.

When Becker returned to the apartment, the baby gate was erected, blocking the access between the bedrooms and the living/dining room. The infant had been put in the crib in the children's bedroom and that door was closed. Appellant and D.R. were in Becker's bedroom which was located the farthest distance from the entry to the apartment. The door to Becker's bedroom was closed. The trial court found the closed bedroom door showed appellant's conduct "occurred in secret." Appellant was on top of D.R. on the bed, and he was holding the back of her neck. D.R. was screaming and crying loudly.

Appellant erected the baby gate between the living room and bedroom area to prevent D.R. from leaving that area. Becker testified D.R. was unable to open the bedroom door, thus, she was unable to escape appellant's sexual assault. Even assuming D.R. was not forced or even taken into the bedroom, she was unable to escape that room because the door was closed.

It is reasonable to infer that by erecting the baby gate and committing the sexual assault behind the closed door, appellant "substantially increased the risk of harm to [D.R.] by decreasing the possibility of detecting his criminal activity." Coram v. Commonwealth, 3 Va. App. 623, 626, 352 S.E.2d 532, 533-34 (1997) (holding sexually assaulting a victim in a location "out of sight of potential passersby, or others who might leave or enter the victim's apartment" "substantially increased the risk of harm to the victim by decreasing the possibility of detecting his criminal activity").

We must remember appellant was a grown male adult and D.R. was a two-year-old toddler. The vast disparity in size would have allowed appellant to detain D.R. by simply lying

- 6 -

on top of her, which he did. As the trial court found, appellant was "pinning [D.R.] down." However, the evidence also showed that D.R. sustained blunt force trauma bruising on her back and the back of her right thigh. Dr. Atkinson described D.R.'s bruises as blunt force trauma caused by an adult's fingers pressing down on D.R.'s body with sufficient force to break the blood vessels beneath the skin. Dr. Atkinson opined that bruising such as that sustained by D.R. is typically seen in children when an adult has "either forcefully grabbed or . . . held down" a child. The trial court found the bruising sustained by D.R. was not "necessary to perform a sex act." The finding of the trial court is not plainly wrong. From the evidence of the blunt force trauma bruising on D.R.'s body, the trial court could infer appellant either forcefully grabbed or held down the small two-year-old child, using "greater restraint than was necessary" to commit the sexual assault. See Powell, 261 Va. at 541, 552 S.E.2d at 360. Causing blunt force trauma bruising "is not an essential, intrinsic element to complete the [sexual offenses]." See Lawlor, 285 Va. at 226, 738 S.E.2d at 869 (finding rendering a victim unconscious is not essential, intrinsic element to complete rape offense).

We conclude that the detention or restraint involved herein was greater than that necessary to commit the sexual assault and was, thus, not intrinsic to or inherent in the separate sexual offenses. Accordingly, the trial court did not err in finding the facts sufficient to show the abduction or detention was separate and apart from the sexual offenses.

Affirmed.